580 A.2d 750

**In re TAMEKA M., a Minor.**

**Appeal of CHILDREN AND YOUTH SERVICES OF ALLEGHENY COUNTY.**

Supreme Court of Pennsylvania.

Argued March 6, 1990.

Decided Sept. 21, 1990.

James J. Dodaro, County Solicitor, James A. Esler, Asst. County Solicitor, Allegheny County Law Dept., Timothy W. Pawol, Asst. County Solicitor, Pittsburgh, for appellant.

Mark Cancilla, Pittsburgh, for Child Advocacy Legal Aid Soc.

Katherine B. Emery, Canonsberg, for Natural Mother.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case presents the question of the relative authority of the Juvenile Court of Allegheny County as opposed to that of Children and Youth Services of Allegheny County ("CYS") which has legal custody of Tameka M., a dependent child, with respect to choosing educational and therapeutic plans in the child's best interest. Tameka M., who was born on January 21, 1981, was adjudicated dependent by the Juvenile Court and placed under the supervision of CYS in March, 1983. Tameka M. was placed with a foster family who had earlier received Tameka's younger brother, Brian. The natural mother failed to follow through with a rehabilitation program and, hence, the permanent plan put into effect for both children was adoption.

Juvenile Court's review of Tameka's placement with the foster parents was held on August 31, 1984. During the hearing, the issue of payment for Tameka's attendance at preschool was considered. Testimony presented at the hearing revealed that in August of 1983 Tameka had been referred to the Parent–Child Guidance Center (Guidance Center) because of self-abusive behavior such as picking at her arms, nose and upper lip until they bled. After an evaluation, the Guidance Center recommended that she be placed in the South Hills Therapeutic Preschool where she was enrolled in September of 1983. The South Hills preschool was funded through Mental Health/Mental Retardation and involved no cost or expense to CYS. In December of 1983, the foster mother removed Tameka from the South Hills preschool because, according to her, Tameka's behavior had deteriorated; for example, her screaming and tantrums had escalated. The foster mother also believed that Tameka was spending too much time at the school, causing her sleeping pattern to be interrupted. The foster parents then enrolled Tameka in a Montessori preschool in an effort to provide a more structured program for the child. The foster mother testified that Tameka's behavior improved after the transfer. The cost of the Montessori program was originally $70.00 per month, but had been increased to $80.00 per month at the time of the hearing. The foster parents had been paying the tuition for the Montessori school. At the review hearing, the foster parents sought reimbursement from CYS for Tameka's attendance at Montessori. Because CYS would receive no reimbursement from the Department of Public Welfare for Tameka's attendance at Montessori, the agency opposed paying her tuition there.

After reviewing the testimony of the caseworker and the foster mother, and a psychological report based on an evaluation of Tameka conducted four months after she enrolled at Montessori, the Juvenile Court ordered CYS to reimburse the foster parents for Tameka's attendance at Montessori. Although the Court acknowledged the finan-

cial limitations of CYS, the Court found that Tameka's masochistic behavior demonstrated that she had both special problems and special needs. The Court noted that her behavior had deteriorated in the South Hills program, but had improved in the Montessori one and therefore that the Montessori program was best suited for her special needs. The Court concluded that the highly structured program at Montessori was therapeutic as well as educational and that enrollment there was in Tameka's best interest. A direct appeal to the Superior Court followed. That court held the order appealable and affirmed, Judge Tamilia dissenting in an opinion joined by Judges Del Sole and Popovich. 368 Pa.Super. 525, 534 A.2d 782.

The Superior Court majority, relying, *inter alia*, on *In re Lowry*, 506 Pa. 121, 484 A.2d 383 (1984), held that the trial court had power under § 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351,[1] to exercise continuing independent and original supervision of a dependent child and to order a public agency which has been given supervision of the child to pay for a treatment plan which the court found to be in the child's best interest. The Superior Court further held

**1.** 42 Pa.C.S.A. § 6351(a) provides as follows:
§ 6531. Disposition of dependent child
(a) General rule.—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child:
   (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.
   (2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:
   (i) Any individual resident within or without this Commonwealth who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.
   (ii) Any agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
   (iii) A public agency authorized by law to receive and provide care for the child.
   (3) Without making any of the foregoing orders transfer custody of the child to the juvenile court of another state if authorized by and in accordance with section 6363 (relating to ordering foreign supervision).

that Juvenile Court did not commit an abuse of discretion when ordering payment in this case.

We granted the Petition for Allowance of Appeal of CYS because of the potentially far-reaching consequences of this case. In situations where resources are limited, we are especially concerned with the proper allocation of discretion between courts and agencies to determine the question of how those resources are to be spent; and we are also concerned with whether our decision in *In re Lowry, supra,* should be distinguishable from the instant case. For the reasons set forth below, we affirm.

CYS argues that the Superior Court erred in holding that the Juvenile Court properly considered the question of the Montessori school at all. CYS maintains that the question only arose at the instance of the foster parents, and that they have no standing to raise the question. CYS relies on *In Re Adoption of Crystal D.R.,* 331 Pa.Superior Ct. 501, 480 A.2d 1146 (1984). That case held that foster parents did not have standing under the Adoption Act, 23 P.S. § 2101, *et seq.,* to petition for the termination of the parental rights of natural parents because the foster parents did not stand *in loco parentis.* CYS would read the Juvenile Act to be subject to the same standing requirement.

█ The Superior Court properly rejected this claim. They held that the argument need not be considered because it was the Juvenile Court order being reviewed and that that order was entered after an evidentiary hearing, and not as a result of the foster parents' actions. The Juvenile Court maintains a continuing plenary jurisdiction in dependency cases under 42 Pa.C.S.A. § 6351 (set forth at n. 1 above, and see, *In Re Lowry, supra,* discussed below) and has the power to review the circumstances of dependent juveniles and to question both the legal custodian, CYS, and the foster parents concerning the condition and the needs of the dependent child. This case is unlike that of *Crystal D.R.* There, the foster parents began an independent proceeding to affect the parental rights of the natural parents. That kind of proceeding properly requires that

taking the initiative be limited to the party *in loco parentis.* Here, there was no problem of standing either at the outset of the proceeding or during its course because Juvenile Court acquired continuing jurisdiction under § 6351(a)(2) once that court found Tameka M. to be a dependent child.

CYS also argues that the Superior Court erred in holding that the Juvenile Court has power under § 6351 of the Juvenile Act to order CYS to fund a dependent child's attendance at what they characterize as a non-therapeutic pre-school which was neither licensed nor funded by the Department of Public Welfare. This argument turns, at least in part, on the language of § 6351(a) which gives the Court authority to make disposition orders for dependent children which are "best suited to the protection and physical, mental, and moral welfare of the child." Section (a)(2) goes on to permit the court to make orders for the custody of the child "subject to conditions and limitations as the court prescribes." The argument also concerns the reach of the court's authority to impose conditions and limitations under our decision in *In Re Lowry, supra.*

The Superior Court ruled that *Lowry* and § 6351 gave the Juvenile Court the authority to order CYS to bear the cost of the Montessori school. In *Lowry,* we held that the court's expressly granted power to place a dependent child in the custody of named residents (see § 6351(a)(2)(i)) was not limited to the list of foster parents certified as qualified by the county, placement with whom would be the only course that would entitle CYS to be reimbursed by the Department of Public Welfare.

CYS would distinguish *Lowry* on this basis: *Lowry* considered the scope of the court's authority to deal with the custody of a dependent child, an authority which is expressly given, and which must be exercised under the Act. This case, however, involves the very general language "subject to conditions and limitations as the court prescribes." CYS argues that this very general language should not be construed broadly to allow the Juvenile Courts to exercise completely independent discretion in disregard of the exper-

tise and the budgetary limitations of public child care agencies.

This argument is really addressed not to the Juvenile Court's power, but to the character of its functions under the Act. It is agreed that at some point the Juvenile Court has the power to impose orders for the protection of the interests of dependent children. The question is whether the court is to exercise independent judgment concerning the program for each dependent child, or whether it is to sit *in review* of the adequacy of the decisions of the public child care agency to which the court assigns the care and legal custody of the child.

The Superior Court's majority held that under *Lowry* the juvenile court could exercise a continuing, independent discretion in the interest of the child. This is correct. In *In Re Lowry,* we held that "[i]n ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, ... rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests." 506 Pa. at 127, 484 A.2d at 386.

That does not end the matter, however. In his dissent, Judge Tamilia offered two reasons for distinguishing *Lowry.* First, he noted that the law establishes the local agencies and charges them with providing treatment and services, including services as legal custodian of dependent children under the Juvenile Act. As governmental agencies clothed with significant discretion and expertise, their statutory role should be respected. Second, he argued that the resources of local CYS agencies are limited. They cannot afford to do everything for the dependent children in their care which might benefit them, and that the allocation of scarce resources is much more a matter of legislative and administrative discretion than of judicial discretion. The agencies and the county boards which support them have much better access to the big picture of the needs of all of the children served by the agency, he argues, than does a

judge who is attending to a single case involving a single child.

The real point at issue is whether the Juvenile Court abused its discretion by not taking into account or finding decisive the fact that CYS would not be reimbursed by the State for the cost of the Montessori school approved by the court. (It is hard to see how, on these facts, and considering the direct welfare of Tameka M., it could be argued that the trial court abused its discretion in any other way.) This, in turn, raises the question of whether the Juvenile Court, in order to vindicate the fundamental statutory right of a dependent child to her own "protection and physical, mental and moral welfare," may order assistance that a county agency, and ultimately the County itself, will have to pay for through the raising and/or expenditure of tax revenues. We find that the Juvenile Court has authority to enter such an order under the Juvenile Act and that that court did not abuse its discretion by doing so in this case.

This point was addressed, at least in part, in *Lowry*. In that case, the homes into which the Juvenile Court placed the dependent children had not received prior approval as foster care homes in compliance with Department of Public Welfare (DPW) regulations. Consequently, CYS would not be reimbursed for the costs of placement in a non-certified home, pursuant to DPW regulations, and would therefore have to bear the full cost of placement itself. Nonetheless, we stated:

That CYS is without authority to place, on its own initiative, a child in an as-yet approved home is clear, 55 Pa.Code §§ 3700.68(b), 3130.39. However, Section 2305 of the Public Welfare Code, 62 P.S. § 2305, provides that "[t]he local authorities of any institution district shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty ..., to provide in foster family homes or child caring institutions adequate substitute care for any child in need of such care and, *upon the request of the court,*

*to provide such services and are for children and youth who have been adjudicated dependent, ..."* 62 P.S. § 2305 (emphasis supplied). Thus, the imprimatur of a court entering a dispositional order pursuant to its authority under Section 6351, in conjunction with the duty placed upon the institution district under Section 2305, *supra,* mandates CYS participation. Again, this result is contemplated by Department regulations which set forth the required services of the county agency, including the provision of "any services and care ordered by the court under provisions of the Juvenile Act ...," 55 Pa.Code § 3130.38(a) and "other required services, including services or care ordered by the court...." 55 Pa.Code § 3130.34(4).

Furthermore, concomitant to the county institution district's duty to provide services is the duty to financially support its dependent children. *Schade v. Allegheny County Institution District,* 386 Pa. 507, 126 A.2d 911 (1956). The county, however, is eligible for partial reimbursement from the Department of Public Welfare for "[t]he costs and expenses of the care of the child [which] shall be paid as provided by sections 704.1 and 704.2 of the act of June 13, 1967 (P.L. 31, No. 21), known as the 'Public Welfare Code.'" 42 Pa.C.S.A. § 6306.

Sections 704.1 of and 704.2 of the Public Welfare Code, 62 P.S. § 704.1, 704.2, merely establish the extent of the Department's liability for reimbursement to the county for expenses incurred by the county for children and youth social services, including services to alleged and adjudicated dependent children, up to the amount of State funds allocated to the county under Section 709 of the Code. Reimbursement under Sections 704.1 and 704.2 is made at varying percentages depending on the type of service provided and the setting in which the service was provided.

Department regulations contemplate that there may be several classes of service provided by a county which are not reimbursable by the Department. Section 3140.-

21(c)(5) provides that "[i]n no case shall the following costs be considered as reimbursable costs: .... (5) the cost of care, maintenance, and treatment of children placed in facilities which do not meet the requirements of [55 Pa.Code] § 3130.39 [limiting the county agency to the use of approved facilities only]...." 55 Pa.Code § 3140.21(c)(5). It does not follow from this, as CYS has argued, that a court is without the authority to order the county institution district to fund non-approved placements. Rather, the result is that the county will bear the entire cost of the placement unless and until it conducts a review of the home and the custodians and certifies the home as an approved foster home, or places the child in an approved home.

In making any disposition pursuant to its authority under Section 6351, the court is guided by the overriding principle of acting "to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter. 42 Pa.C.S.A. § 6301(b)(1). We, too, in construing the Juvenile Act, are directed by Section 6301 to observe the same stated purpose. Accordingly, that result which will encourage, rather than discourage, action related to the best interests and protection of the child, is preferred....
484 A.2d at 387–388.

We repeat, under our law, CYS has the duty to give financial support to dependent children, and Juvenile Court has the duty to act to provide for the "protection and physical, mental and moral welfare" of a dependent child. This bestows on a dependent child the legal right to such care and treatment to be paid for by CYS. Were the choice here between two equally effective schools, both suited to the child's special needs, the costs of one of which was reimbursable by DPW and the other not, we would have no hesitancy in holding that it would be an abuse of discretion not to direct that the child be sent to the school the expenses of which were reimbursable. But that was not the choice here. Here, the facts show that the school whose

expenses were reimbursable was not adequate while the non-reimbursable Montessori school would provide adequate treatment. It was clearly not error to ignore reimbursability in this situation. The Juvenile Act, as reinforced by our case law, was passed for the *benefit* of dependent children and is based on humanitarian ideals. Once the state intervenes in an individual's life there is the corresponding obligation to provide adequate treatment services to the person affected. *Welsch v. Likins,* 373 F.Supp. 487 (D.Minn.1974). In the usual "right to treatment" case, an inmate of an institution brings a suit alleging deprivation of liberty and that he or she has not received adequate treatment in the institution. Failure to provide adequate treatment to an inmate of a mental institution is a violation of due process. See, *Wyatt v. Stickney,* 325 F.Supp. 781 (M.D.Ala.1971). Here, we are presented with a somewhat different situation. It has been proven that a child will not receive adequate treatment at one school (expenses to be reimbursed by the state) but will receive adequate treatment at a non-reimbursable Montessori school. To order Tameka M. to attend a school where she would not receive proper treatment would be to deprive her of due process and of her fundamental rights under the laws of Pennsylvania. Consideration of expense must give way under such circumstances particularly where the relevant governmental agency (here, CYS) has an expressed legal duty to provide and pay for such care.

The juvenile courts have a tradition of acting *in loco parentis* and they are particularly well suited to order relief that is treatment oriented. Treatment is the entire premise underlying the juvenile court system. See, *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Tameka M. has a right to life guaranteed by the Constitution and a right to adequate care and treatment under the laws of Pennsylvania. The Juve-

nile Court did not abuse its discretion in ordering treatment best suited to meet her needs here regardless of the financial consequences to CYS where the legal duty of CYS is to pay for such care.

Affirmed.

CAPPY, J., joins the majority and files a concurring opinion.

ZAPPALA, J., files a concurring opinion.

McDERMOTT, J., files a dissenting opinion.

CAPPY, Justice, concurring.

I join in the opinion of the majority, but write separately to address two specific points. Before reaching them I wish to note that both the trial judge and the foster parents should be lauded for their efforts in this difficult case.

First, it should be emphasized that the foster parents recognized the special needs of Tameka and repeatedly asked for assistance and guidance from Children and Youth Services (CYS) in addressing those needs. Prior to having the child undergo a psychological evaluation as requested by the foster parents, CYS recommended placing the child in the South Hills Therapeutic Preschool. When the foster mother complained that this program was not addressing Tameka's specific problems, she was informed by CYS that she could make alternate arrangements for the child but, they would not be paid for by CYS.

The foster mother chose to do exactly that. She enrolled Tameka in the Montessori School, selecting that program because it was highly structured. Once there the child did improve. The foster mother so strongly believed that the Montessori preschool was the best program for Tameka that she paid the tuition herself.

By the time the requested psychological evaluation finally occurred, Tameka had been in the Montessori school for over four months. Dr. Harway's evaluation concluded that the child needed a well structured preschool environment and that she seemed to be doing well at the time she was

evaluated. The report did not make a selection as to which preschool would best suit the child. A fair reading of the entire report supports the trial judge's conclusion that the school in which the child was enrolled at the time of the evaluation was the preferred place to continue her education.

The second point I which to make is to emphasize the difficult task facing the trial judge. He was forced to decide whether the child should remain in the preschool environment that clearly seemed to be in her best interests, and refuse to order compensation for a foster parent who had been so diligent in seeking the best care for this child; or, to accept the recommendation of CYS and refuse payment for Tameka's schooling unless she was returned to the less desirable program at South Hills Therapeutic Preschool.

In reaching his decision, the trial judge obviously took great care in adhering to the philosophy that decisions affecting dependant children such as Tameka, should be made on the basis of what is appropriate and needed for the child; not on the basis of financial considerations alone—as recommended by CYS. This decision should not be taken as a means to allow Juvenile Court Judges to ignore the financial restraints of agencies such as CYS; but as only what it is, a decision resting on its own particular facts. Again I reiterate, the efforts of the foster parents and the trial judge in this particular case must be applauded.

ZAPPALA, Justice, concurring.

I concur in the result. I write separately to emphasize that the decision here should not be interpreted as authorizing foster parents to seek, or judges to order, payment for "non-funded" services in routine placement situations. The decision of the juvenile court was based on the highly unusual set of facts presented at the hearing in this matter, which is virtually sui generis. The court determined that the state-funded therapeutic pre-school was inadequate and ineffective in addressing this child's extreme masochistic

behavior and other behavioral problems, while the non-funded program had proven beneficial. This determination was consistent with the assessment provided by the psychologist to whom CYS had referred the child. The order, which was subject to review in six months, was both reasonable and necessary for the protection and welfare of the child.

McDERMOTT, Justice, dissenting.

The authority to select educational resources for children in the care of the Children and Youth Services of the Department of Welfare is circumscribed by budgetary restraints. That many may be served those restraints must be observed. However laudable may be purposes other than those prescribed by the agency, we cannot select more for one dependent than we can give to all. I respectfully and regretfully dissent.