619 A.2d 758

In re: DEANNA S., A Minor.

**Appeal of: Kimberly L. OLIVER, Esquire, counsel for Deanna S., The above named Minor.**

Superior Court of Pennsylvania.

Argued Dec. 10, 1992.

Filed Jan. 22, 1993.

440

Kim Oliver, Pittsburgh, in pro per.

James A. Esler, Pittsburgh, for Children and Youth Services, participating party.

Before TAMILIA, HUDOCK and MONTGOMERY, JJ.

TAMILIA, Judge:

This appeal is taken from the Order of April 29, 1992, closing the case of Deanna S., a minor. Deanna was born on March 23, 1976, and adjudicated dependent in October, 1987 as a result of allegations that she was a victim of physical and sexual abuse by relatives. On December 3, 1990, Deanna ran away from a group home where she had been placed, and she has been missing since that time. At a review hearing on April 29, 1992, Children and Youth Services of Allegheny County ("CYS") presented an addendum detailing its specific and considerable efforts to locate Deanna, all without success. CYS recommended that it be relieved of the duty of looking for Deanna any longer, and that the case be closed. Nonetheless, the CYS caseworker stated the agency was willing to reopen the case in the event Deanna was found. The child advocate objected, but the case was closed. A motion for reconsideration, heard on May 6, 1992, was denied and this appeal followed.

On appeal, the child advocate argues the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, does not allow for the action taken by the trial court in this case. We disagree with the reasoning of the trial court but agree with the result.

In cases of dependent children, covered by section 6351, the Juvenile Act provides the following:

> (e) **Disposition review hearings.**—Within six months of the removal of a child from the home of his parents, guardian or custodian for placement pursuant to a transfer of temporary legal custody or other disposition under subsection (a)(2), the court shall conduct a disposition review hearing for the purpose of determining whether placement continues to be best suited to the protection and physical, mental and moral welfare of the child. The court shall conduct a second review hearing not later than six months after the initial hearing, a third hearing not later than six months after the second hearing and subsequent disposition review hearings at least every 12 months *until the child is returned home or removed from the jurisdiction of the court.*

42 Pa.C.S. § 6351(e) (emphasis added). In *In re Lowry,* 506 Pa. 121, 484 A.2d 383 (1984), our Supreme Court held that "[i]n ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, ... rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests." *Lowry, supra* at 127, 484 A.2d at 386. More recently, the Supreme Court clarified the role and duty of CYS and the Juvenile Court to provide treatment and supervision of dependent children. *In re Tameka M.,* 525 Pa. 348 580 A.2d 750 (1990).

In this case, Deanna has been a runaway for more than two years, and clearly has avoided the jurisdiction of the court. Counsel for the child alleges the child was seen in the community within the six months prior to the review hearing and, therefore, was last known to be within the jurisdiction of the court. Therefore, the mandates of *Lowry* and *Tameka M.* apply, unless there is some other cogent basis upon which the child may be serviced by the Juvenile Court, thereby relieving the agency of its duty. We recognize that in many instances dependent children do not, or cannot, avail themselves of the necessary support and protection offered by CYS, and for this

reason the juvenile court properly acts *in loco parentis*. This case, however, concerns a child, albeit one approaching the age of majority, who successfully has evaded apprehension by authorities for more than two years. CYS can only do so much for any dependent child, much less a wily, apparently street-wise older child who has been on her own for two years. CYS is not Interpol; it is not charged with tracking down all runaway dependent children to the detriment of the dependent children whose whereabouts are certain. In those situations, to carry the child on the CYS rolls as a dependent child in an inactive status, subject only to a continued six-month review requirement, is not onerous or excessively costly. The court or the agency cannot be relieved of jurisdiction simply because the child runs away while under agency supervision. The "removed from the jurisdiction of the court" provision of section (e) cannot be interpreted to mean that the court's or CYS' jurisdiction is ousted simply by the child avoiding apprehension. Removal from the jurisdiction of the court means placement outside the legal reach of the court by incarceration in a foreign jurisdiction or relocation to a different county or state which can assume jurisdiction. Under those circumstances, such changes can be accomplished pursuant to the provisions of the Juvenile Act, section 6361, Disposition of nonresident child. This section provides for a variety of means of accepting or transferring jurisdiction. Section 6363, Ordering foreign supervision, further amplifies the transfer of jurisdiction and establishes how the costs are paid for maintenance of the child.

The Supreme Court Opinion in *Tameka M.* noted that "the resources of local CYS agencies are limited. They cannot afford to do everything for the dependent children in their care which might benefit them...." *Id.* at 354, 580 A.2d at 753. This does not, however, void the mandates of CYS and the Juvenile Act which are fully supported by *Tameka M.* There, Justice Papadakos, speaking for the majority, stated:

We repeat, under our law, CYS has the duty to give financial support to dependent children, and Juvenile Court has the duty to act to provide for the "protection and

> physical, mental and moral welfare" of a dependent child. This bestows on a dependent child the legal right to such care and treatment to be paid for by CYS.

*Id.* at 348, 580 A.2d at 755. To permit the agency to close cases as to runaways simply to avoid spending money looking for them would be an invitation to CYS to do nothing for runaways with the assurance the court would be sympathetic to the claim that the money always could be spent better elsewhere. While it is true that with limited resources CYS must establish priority use for its funds, it cannot ignore *any* mandated service because the money could be spent better elsewhere. A systematic search procedure could be adopted in these cases much as is done by police in conducting fugitive searches for persons charged with crimes, to avoid dismissal due to running of the statute of limitations. These procedures can be effective without being excessively costly or time consuming. Thus the trial court's determination that the money spent searching for Deanna could be put to better use for other dependent children was an abuse of discretion.

■ We, conclude, however, the closing of this case as to CYS is appropriate because the court has retained jurisdiction of the child as a delinquent. While the child advocate alleges the action of Judge Cheryl A. Craig, who on May 7, 1992 continued the child's delinquency review for six months, shows a split in policy between judges as to handling of dependency and delinquency cases, we find the action serves a complimentary purpose which renders the Order of Judge Strassburger acceptable because the necessary result has been achieved. Once a child is determined to be delinquent, unless it is necessary for placement purposes to have an adjudication of dependency and delinquency, no need exists to retain the supervision of CYS. The true waste of public funds is to have both CYS and the Juvenile Court staff active in a case when either can and will provide the service. Obviously, at her age, Deanna S. is not going to be amenable to the less stringent controls of CYS. The Juvenile Court, exercising its parens patriae function with dependent children, can only operate through CYS to effect or compel treatment of the child. If

the agency fails, the court can do little. As a delinquent child subject to direct court supervision, control and detention, the Juvenile Court can be far more effective. Since the Juvenile Court has retained jurisdiction of Deanna S. as a delinquent child pursuant to Judge Craig's Order, the necessity of further CYS involvement is eliminated. The court, through its probation office, will presumably continue its efforts to locate her and to bring her back into treatment. In the event she is found, it can then be determined if any further agency services are required, at which time the CYS case can be reopened.[1]

For the above reasons, we affirm the Order of the trial court.

Order affirmed.

1. We note that the Legislature determined in 1976 that incorrigibles and truants were to be treated by the court as dependent children, subject to CYS supervision, and not as delinquent as had been the case under prior law. *See* 42 Pa.C.S. § 6302, Definitions. While many states have adopted a "valid court order" amendment which permits the Juvenile Court to apply more stringent measures to control uncooperative behavior, the Pennsylvania Legislature has not seen fit to do so. The result is that CYS, with no security capacity, is ineffective in dealing with children such as Deanna, and both CYS and Juvenile Courts tend to wash their hands of those cases. The result of this inadequate approach can be measured in increased illegitimacy, prostitution, drug involvement, delinquency and failure to enter adulthood with the requisite life skills to avoid welfare and incarceration. This case reflects the failure of that policy.