In the Interest of S.J., a Minor

Appeal of Allegheny County Office of Children Youth and Families.

Superior Court of Pennsylvania.

Submitted Feb. 22, 2005.
Filed July 28, 2006.
Reargument Denied Sept. 28, 2006.

Wendy Kobee, Pittsburgh, for appellant.

Jennifer K. Pokempner, Philadelphia, for Juvenile Law Center, amicus curiae.

BEFORE: HUDOCK, PANELLA, and OLSZEWSKI *, JJ.

OPINION BY PANELLA, J.:

¶ 1 This case is before us on remand from the Pennsylvania Supreme Court. Pursuant to the Supreme Court's order, *see In re S.J.,* 586 Pa. 461, 894 A.2d 1288 (2006), we now consider this case in light of the Supreme Court's decision in *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995).

¶ 2 In *Curtis,* the Supreme Court addressed the question of whether Act 62, 23 PA.CONS.STAT.ANN. § 4327(a), a statute requiring separated, divorced, or unmarried parents to provide post-secondary education support to their adult children, violated the equal protection clause of the Fourteenth Amendment. The Court held that the statute violated the equal protection clause because Act 62 classified, without a rational basis, "young adults according to the marital status of their parents, establishing for one group an action to obtain a benefit enforceable by court order [i.e., funds for a post-secondary education] that is not available to the other group."

*Id.,* at 258, 666 A.2d at 269. In doing so, the Court stated that "we perceive no rational basis for the state government to provide only certain adult citizens with legal means to overcome the difficulties they encounter in [financing post-secondary education]." *Id.,* at 259, 666 A.2d at 269–270.

■ ¶ 3 In the instant case, Appellant, Allegheny County Office of Children, Youth and Families ("OCYF"), does not challenge the constitutionality of Pennsylvania's Juvenile Act (the "Act").[1] Rather, OCYF contends that the trial court erred in ordering OCYF, a county child welfare agency, to provide spending money to an eighteen-year-old college student who had, pursuant to the Act, been residing in foster care. Statutes and case law regarding a parent's obligation to pay child support are irrelevant to this case, which involves a youth adjudicated dependant under the Act and not a child who is the subject of a private child support matter brought under the Pennsylvania Domestic Relations Code. Thus, *Curtis* has no application to this case because Act 62 only pertained to private support matters and did not purport to define a children and youth agency's obligation to dependant youth in state care.

¶ 4 Moreover, this case is not about OCYF providing post-secondary educational support. S.J.'s tuition is being paid by way of scholarships. The issues in this case involve the authority of the juvenile court to continue to address necessary case management, foster care maintenance, and limited financial assistance decisions for a properly adjudicated dependent child. There are no equal protection concerns herein and, as noted, OCYF rais-

---

* The Honorable Peter Paul Olszewski, now retired, took no part in the decision of this case on remand.

1. 42 PA.CONS.STAT.ANN. §§ 6301–6365.

es none, because the Act, by its terms, addresses the needs of adjudicated dependent and delinquent children, and provides for services by appropriate child welfare agencies.[2] Likewise, the Act does not apply to nondependent children who are the subject of child support cases under the Domestic Relations Act.

¶ 5 Accordingly, we find that the reasoning underlying our prior decision remains applicable. Therefore, we affirm the insightful decision of Judge Christine Ward of the Court of Common Pleas of Allegheny County. A full discussion follows.

¶ 6 On December 18, 2002, S.J., at the age of sixteen, was adjudicated dependent. Since her adjudication of dependency, S.J. has been in the care of her paternal aunt and uncle. Prior to her eighteenth birthday,[3] S.J. signed an affidavit requesting that she remain under the care and supervision of OCYF. Thereafter, S.J. graduated from high school and received a scholarship to attend Carlow University where she began her studies in the fall of 2004.

¶ 7 On September 1, 2004, a review hearing was held in which S.J.'s guardian *ad litem* requested that her case remain open so that she may receive financial assistance in the form of a "college rate," to be paid by OCYF, to assist her in the cost of essentials while she attended college. At the hearing, S.J.'s guardian *ad litem* presented the testimony of Wesley Brown, an Administrator for Policy and Planning with the Philadelphia Department of Human Services, and Irving Rosen, the Executive Assistant to the Deputy Commissioner for Administration in Management. Brown testified that Philadelphia has adopted a formal policy with respect to continued financial assistance for

dependant minors who expect to remain under the care of the agency beyond their eighteenth birthday. The policy provides for board extensions which cover, *inter alia*, a nominal stipend for college expenses to assist children who have remained in placement from age eighteen to twenty-one years of age. Under the program, the children are paid directly and receive approximately $14.03 per day as long as they remain in a college program. The stipend is paid regardless of the financial assistance the child receives from the college. Brown noted that the Commonwealth reimburses the Department for 80% of the program's expenses, thus defraying the cost to the Department to $2.01 per day, per child. Similarly, Rosen confirmed Brown's testimony that the Commonwealth reimburses the Department for 80% of the program's expenses and noted that he was not aware of an instance in which the Commonwealth refused to reimburse the department.

¶ 8 OCYF opposed S.J.'s request, arguing that she is no longer a dependent child and that it was contrary to the law to have her case remain open solely to provide her with assistance in the payment of costs associated with post-secondary education. OCYF further argued that S.J. had a part-time job and that she was "being fully supported for her educational expenses" through her scholarship. N.T., 9/1/04, at 20.

¶ 9 The trial court rejected OCYF's arguments and concluded that it had the authority under the Act to order OCYF to provide S.J. and her foster family with funds it deemed appropriate. Accordingly, the trial court entered an order on September 1, 2004, in which it ordered OCYF

**2.** The definitions of "Dependent Child" and "Delinquent Child" are stated in 42 Pa.Cons. Stat.Ann. § 6302.

**3.** S.J. was born on April 21, 1986.

to provide S.J. "with a 'college rate' of $14.00 per day while she is living away from her foster home and enrolled in college classes[ ]" and ordered that "[u]pon [S.J.'s] return to ... [her] foster home during college breaks, the 'college rate' payments are to temporarily cease." Order, 9/1/04. The trial court further ordered that while S.J. is residing at her foster home, OCYF must pay the foster parents "the standard foster care rate...." *Id.*

¶ 10 The trial court's order was premised on its finding that

> providing S.J. with a 'college rate' of $14.00 per day will ensure that S.J. has been provided with an opportunity to obtain continuing education at the postsecondary level. The added financial assistance may preclude any additional hindrances that could potentially thwart S.J.'s success in pursuing higher education that she otherwise would have had to deal with had she not received the funding. With this additional assistance, S.J. will have the opportunity to evolve into a mature young adult and develop the skills to live independently.

Trial Court Opinion, 11/8/04, at 8. Additionally, the trial court found that S.J.'s "scholarship does not cover housing, personal items or meals when the dormitory and cafeteria are not open." *Id.,* at 9. This timely appeal followed.

¶ 11 On appeal, OCYF argues that the trial court committed a legal error in finding that it had the authority to order financial assistance for an individual now attending college, who had been declared dependent prior to her eighteenth birthday, but is still under the jurisdiction of juvenile court. As OCYF's appeal presents a question of law, our standard and scope of review is well-settled: Our standard of review is *de novo* and our scope of review is *plenary*. *See WellSpan Health*

*v. Bayliss,* 869 A.2d 990, 996 (Pa.Super.2005).

¶ 12 In support of its argument, OCYF first contends that the trial court erred in finding that S.J. is a "child" as defined by the Act and who, as such, comes within the purview of the Act; however, the Act establishes that upon turning eighteen years of age a dependent child may, under certain circumstances, remain under the care afforded by the Act until turning twenty-one years of age. Specifically, the Act requires that such a person has been

> adjudicated dependent before reaching the age of 18 years and who, *while engaged in a course of instruction* or treatment, requests the court to retain jurisdiction until the course has been completed, but in no event shall a child remain in a course of instruction or treatment past the age of 21 years.

42 Pa.Cons.Stat.Ann. § 6302 (emphasis added).

¶ 13 In the present case, it is undisputed that S.J. was adjudicated dependent before turning eighteen years of age. Therefore, S.J. remains under the purview of the Act until she turns twenty-one years of age if she continues to be "engaged in a course of instruction." The phrase "course of instruction" is not defined in the Act. The trial court concluded that attending college constitutes engagement in a "course of instruction" pursuant to § 6302. We agree.

¶ 14 "The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." *Grom v. Burgoon,* 448 Pa.Super. 616, 672 A.2d 823, 825 (1996). *See also* 1 Pa.Cons.Stat.Ann. § 1903(a). "Course" is defined as "a. [a] body of prescribed studies constituting a curriculum and leading towards an advanced degree" or "b. [a] unit of such a

curriculum." WEBSTER'S II NEW COLLEGE DICTIONARY 259 (1995). We find that the plain meaning of the phrase "course of instruction" clearly includes college classes.

¶ 15 This construction dovetails with one of the express purposes of the Act which is "[t]o provide for the care, protection, safety and wholesome mental . . . development of children coming within the provisions of this chapter." 42 PA.CONS. STAT.ANN. § 6301(b)(1.1). Without doubt, attendance at college, in pursuit of a bachelor's degree, is an activity that provides for the "wholesome mental development" of a child under the Act. Furthermore, numerous studies have documented the economic benefits of attaining a bachelor's degree. *See, e.g.,* Andrew S. Gruber, *Promoting Long–Term Self–Sufficiency for Welfare Recipients: Post–Secondary Education and the Welfare Work Recipient,* 93 Nw. U.L. Rev. 247, 276 (1998) (noting that in 1995, the average annual earnings for a woman with a high-school degree was $15,970, while a woman with a bachelor's degree earned $26,841).

¶ 16 As the trial court properly found that S.J. was a "child" as defined by 42 PA.CONS.STAT.ANN. § 6302, we turn to the issue of whether the trial court had the authority to enter the order requiring the expenditure of funds by OCYF to assist S.J. in acquiring her college education. This authority stems from 42 PA.CONS.STAT. ANN. § 6351, which permits a trial court to enter an order for a dependent child which is "best suited to the protection and physical, mental, and moral welfare of the child." 42 PA.CONS.STAT.ANN. § 6351(a). Section 6351(a)(2) permits the trial court to enter disposition orders for children under the Act which are "subject to conditions and limitations as the court prescribes." 42 PA.CONS.STAT.ANN. § 6351(a)(2). As our Supreme Court not-

ed in *In re Lowry,* 506 Pa. 121, 484 A.2d 383 (1984):

> In ordering a disposition under § 6351, the court acts not in the role of adjudicator reviewing the action of an administrative agency, in which case, the regulations promulgated to bind that agency could not be ignored; *rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests.*

*Id.,* at 127, 484 A.2d at 386 (emphasis added). The authority conveyed to the trial court by the Act permits it, if the court finds that it is in the best interests of the child, to "order assistance that a county agency, and ultimately the County itself, will have to pay for through the raising and/or expenditure of tax revenues." *In re Tameka M.,* 525 Pa. 348, 355, 580 A.2d 750, 753–754 (1990).

¶ 17 In *In re Tameka M.,* the trial court ordered Children and Youth Services of Allegheny County ("CYS") to reimburse the dependent child's foster parents for the child's attendance at a Montessori school. The trial court had found that the child's attendance at the school was in the child's best interest. Our Supreme Court, citing *Lowry,* ruled that the trial court had the authority to order a county agency to expend the funds. Specifically, the Court noted that

> under our law, CYS has the duty to give financial support to dependent children, and Juvenile Court has the duty to act to provide for the 'protection and physical, mental and moral welfare' of a dependent child. This bestows on a dependent child the legal right to such care and treatment to be paid by CYS.

*In re Tameka M.,* 525 Pa. at 357, 580 A.2d at 755.

¶ 18 In the present case, the trial court, as noted, found that it was in S.J.'s best interest to have the financial assistance for

her college education. In accordance with *In re Tameka M.*, we find that the trial court had the authority to enter the order requiring OCYF to provide S.J. with the financial assistance. Furthermore, in exercising her discretion, the trial judge went to great lengths to balance the financial considerations of this obligation with the appropriate needs of S.J. regarding college. As highlighted by then Justice, now Chief Justice Cappy, in his concurring opinion in *In re Tameka M.*, "[t]his decision should not be taken as a means to allow Juvenile Court Judges to ignore the financial restraints of agencies such as CYS; but as only what it is, a decision resting on its own particular facts." *Id.*, at 360, 580 A.2d at 756. We note with approval the trial court's comments:

> Moreover, the Commonwealth of Pennsylvania will reimburse OCYF eighty-percent (80%) of all funds spent on supervised independent living services, under which S.J.'s situation clearly falls. See 55 Pa.Code § 3140.22(e)(3). Therefore, OCYF will only be responsible for $756.00 of the total $3,780.00 spent on S.J.'s "college rate", which this Court believes is a reasonable expense in providing a "wholesome mental development of the child."
>
> OCYF"s argument that the court is mandating agency policy is misplaced. This Court's order applies only to S.J. and does not require the agency to create any policy or procedure.

Trial Court Opinion, 11/8/04, at 9 (footnote omitted).

¶ 19 Order affirmed. Jurisdiction relinquished.