J-S34001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.N., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.E.N., BIOLOGICAL PATERNAL GRANDMOTHER | No. 1872 MDA 2015 |

Appeal from the Order Entered October 7, 2015
In the Court of Common Pleas of Cumberland County
Juvenile Division, at No(s): CP-21-DP-0000105-2013

BEFORE: PANELLA, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J. **FILED SEPTEMBER 08, 2016**

T.E.N. ("Paternal Grandmother") appeals, *pro se*, from the order entered October 7, 2015, in the Court of Common Pleas of Cumberland County, terminating court supervision as L.N. ("Child"), born in February 2013, was adopted and services were no longer needed. The order further terminated Child's dependency and closed the case with Cumberland County Children and Youth Services (the "Agency"), as well as discharged Child from the custody of the Agency and the Agency's foster care services. We affirm.

The trial court summarized the relevant procedural and factual history, in part, as follows.

> [M.N.] (hereinafter "Father") and [S.B.] (hereinafter "Mother") are the biological parents of L.N. [The Agency] became involved in L.N.'s life after reports that both parents were abusing cocaine and/or prescription medications. Both parents admitted to using crack cocaine, and L.N. was taken from their custody and placed with [Paternal] Grandmother in

May of 2013.[1] Following a resource family assessment, which denied [Paternal] Grandmother as an adoptive resource for L.N., [the Agency] filed a Motion for Modification of Child's Placement. On August 28, 2013, a hearing was held before the Honorable Judge Guido of the Cumberland County Court of Common Pleas regarding [the Agency's] Motion for Modification of Child's Placement. Testimony was given that [Paternal] Grandmother was denied as an adoptive resource due to health and financial concerns, as well as the fact that [Paternal] Grandmother had her own son [J.], removed from her care by York County Children and Youth Services only a year earlier.

. . .

Based on all of the testimony presented at the August 28, 2013 hearing, the Honorable Edward Guido removed L.N. from [Paternal] Grandmother's custody, stating that [Paternal] Grandmother was not in a position to be a long-term resource and expressing concern that there was still an active York County CYS case open with [Paternal] Grandmother, and that, therefore, it was in the Child's best interest to place the Child in the care of [the Agency] to be placed with a foster family.

L.N. was ultimately placed with [Foster Parents] on August 28, 2013, although L.N.'s reunification with her biological parents remained the goal. Eventually, however, L.N.'s biological parents each failed to comply with their permanency plan, and the goal was changed to adoption.[2] Mother signed a consent to adoption on April 28, 2014. On August 19, 2014, [the Agency] filed a Petition to Terminate Father's parental rights, and a hearing on the same was scheduled for September 24, 2014. Prior to the September 24, 2014 Permanency Review, [Paternal] Grandmother filed her Motion to Intervene, which was granted by the Court with the consent of the parties.

At the September 24, 2014 hearing, Father voluntarily consented to the termination of his parental rights. In light of

_____

[1] Child was adjudicated dependent by Master's Recommendation for Adjudication and Disposition-Child Dependent dated May 23, 2013, and adopted by order entered May 31, 2013.

[2] The court changed Child's permanency goal to adoption on September 24, 2014.

the fact that both Mother and Father consented to the termination of their parental rights, [Paternal] Grandmother requested to be reassessed as an adoptive resource for L.N. That request was granted. At a February 20, 2015 hearing regarding [Paternal] Grandmother's Motion for Modification of Placement, testimony was given that [Paternal] Grandmother had been reassessed in November of 2014, but once again [Paternal] Grandmother was denied as an adoptive resource. Once again, the reasons given for the denial were concerns with [Paternal] Grandmother's health, concerns with the environmental conditions of [Paternal] Grandmother's residence, and [Paternal] Grandmother's past history with York County CYS.

. . .

At the conclusion of the February 20, 2015 hearing, the [c]ourt took the matter under advisement. In an Order dated April 16, 2015, this [c]ourt denied [Paternal] Grandmother's Motion for Modification of Placement, stating that it would not be in L.N.'s best interests to remove her from [Foster Parents]. The [c]ourt further ordered that [the Agency] should move forward with the planned adoption by [Foster Parents].

Subsequent to the [c]ourt's April 16, 2015 Order denying [Paternal] Grandmother's Motion to Modify Placement, [Paternal] Grandmother filed a Custody Complaint on April 30, 2015 . . . seeking full legal and physical custody of L.N. In response, the Court [o]rdered a custody conciliation to take place on June 9, 2015. However, [Paternal] Grandmother's Custody Complaint failed to join [Foster Parents] to the custody action. This [c]ourt found them to be necessary parties to the conciliation under Pennsylvania Rule of Civil Procedure 1915.6, so the custody conciliation was continued,[3] and eventually rescheduled for July 14, 2015. At the July 14, 2015 conciliation, all parties appeared and were unable to reach an agreement to settle the custody action. Nevertheless, the Custody Conciliator recommended, and this [c]ourt so ordered, that [Paternal] Grandmother be awarded visitation with the Child every third week in a visitation center. A full custody hearing was scheduled for November 20, 2015.

---

[3] This order was initially entered on the dependency docket, instead of the related custody docket at docket number 2015-2460 in error. By order entered December 23, 2015, the trial court corrected the docketing error.

On June 26, 2015, this [c]ourt entered an Order in the dependency docket noting that the dependency proceedings and the custody proceedings run collaterally to one another, and that the commencement of the custody proceedings would not prevent the dependency proceedings from moving forward toward adoption. Before the November 20, 2015 custody hearing could occur, L.N.'s adoption by [Foster Parents] was finalized on October 2, 2015….

Trial Court Opinion, 12/23/15, at 4-9 (footnotes omitted).

By order entered October 7, 2015, the trial court terminated court supervision as Child was adopted and services were no longer needed. The court further terminated Child's dependency and closed the Agency's case. In addition, the court discharged Child from the custody of the Agency and the Agency's foster care services.

On October 26, 2015, Paternal Grandmother, *pro se*, filed a notice of appeal.[4] Although Paternal Grandmother did not file a separate statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), her notice of appeal contains alleged errors.[5] On appeal, Paternal Grandmother essentially challenges Child's placement, the failure of the trial court to appoint her counsel, her exclusion from the proceedings on June 15,

---

[4] Paternal Grandmother filed a separate appeal with regard to the related custody matter at Superior Court docket number 1880 MDA 2015.

[5] We note that Paternal Grandmother's brief does not include a statement of questions involved, for which we could find waiver. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006). However, Appellees do not raise this concern or request such relief. We, therefore, review the issues raised by Paternal Grandmother.

2015, and the failure of the trial court to provide her notice of Child's adoption by Foster Parents.[6]

Our standard of review in dependency cases

requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

We first examine the trial court's placement of Child. On this topic, the trial court expressed

concerns regarding [Paternal] Grandmother's health, finances, and her past involvement with York County CYS, including the environmental concerns with her home, Judge Guido found that removal from [Paternal] Grandmother's home was in L.N.'s best interests. Judge Guido ordered L.N. to be placed in the care and custody of [the Agency] so that she could be placed in a foster home, and L.N. was ultimately placed with [Foster Parents] on August 28, 2013.

Trial Court Opinion, 12/23/15, at 14. The court further stated that

[f]ollowing the February 20, 2015 hearing, this [c]ourt reviewed the full record, and gave great thought as to whether to place L.N. with [Paternal] Grandmother, as it was obvious [Paternal] Grandmother's love for L.N. was in earnest. Nevertheless, so was [Foster Parents'] love for L.N. In an Order dated April 16, 2015, the [c]ourt denied [Paternal] Grandmother's Motion to Modify Placement. In doing so, the Court relied on the record as

---

[6] As indicated, Paternal Grandmother takes the current appeal from the order entered October 7, 2015, which terminated court supervision due to Child's adoption. To the extent Paternal Grandmother attempts to challenge the trial court's orders of August 28, 2013 and April 16, 2015, entered on August 29, 2013 and April 17, 2015, respectively, which removed Child from her placement and denied the modification of placement, such appeal would be untimely. *See* Pa.R.A.P. 903(a).

- 5 -

a whole, the testimony from the February 20, 2015 hearing regarding [Paternal] Grandmother's history with York County CYS, the conditions of [Paternal] Grandmother's home, [Paternal] Grandmother's health, [Paternal] Grandmother's finances regarding the burden of paying for a young child in addition to her already burdened finances, and the fact that L.N. had been living with [Foster Parents] since she had been approximately seven months old and had formed a bond to them as her parents.

As such, the [c]ourt found that keeping L.N. in the care of [Foster Parents] and moving forward with the adoption process was in the child's best interest. Thus, the [c]ourt's decision to deny [Paternal] Grandmother's Motion to Modify Placement was not the result of partiality, prejudice, bias or ill-will, but was instead made with [] L.N.'s best interests in mind. Therefore, the [c]ourt's decision was not an abuse of discretion.

*Id*. at 16-17.

We have stated:

When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 574 A.2d 690, 691 (Pa. Super. 1990) (noting that "[o]nce a child is adjudicated dependent . . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter. 42 Pa.C.S. § 6301(b)(1.1). Indeed, [t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child. *In re E.F.V.*, 315 Pa. Super. 246, 461 A.2d 1263, 1267 (1983).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some internal quotation marks omitted).

The primary purpose of the disposition of a dependent child is to examine what is in the best interest of the child. *See* 42 Pa.C.S. § 6351(a);

- 6 -

*In re Tameka M.*, 580 A.2d 750, 753 (Pa. 1990). Further, following an examination and findings on the factors provided in § 6351(f) and (f.1), regarding matters to be determined at the permanency hearing, the trial court must also find that the Agency has met its burden that a modification of placement is in Child's best interests. *See* 42 Pa.C.S. § 6351(g); *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Here, given the evidence presented as to Paternal Grandmother's health, finances, and home and/or environmental conditions, the record supports the trial court's finding that it was not in Child's best interests to be placed with Paternal Grandmother. Testimony confirmed that Paternal Grandmother suffers a litany of health problems—neuropathy due to a damaged sciatic nerve from back surgery, diabetes, asthma, high blood pressure, high cholesterol, and anxiety. *See* N.T., 8/28/13, at 3-4. Her prior treating nurse practitioner, Kathleen Tolleson, testified that "as the baby becomes more active, it may be more difficult for Paternal Grandmother to be able to take care of a two- and three-year-old, a toddler." *Id*. at 6. Likewise, her current treating nurse practitioner, Lydia Washington, corroborated continuing anxiety issues, indicating that, while summarized as "stable," Paternal Grandmother's anxiety was "uncontrolled" on November 5, 2014. N.T., 2/20/15 (Part 1), at 6-10.

Financially, Paternal Grandmother noted that she escrowed her real estate license and received approximately nine hundred sixty dollars per month in disability. *See id*. at 37, 41-42. She admitted to Judy Thomas,

independent contractor for Agape Associates who prepared the resource family assessment, that, although she was "making it," "she was not in good financial shape." N.T., 2/20/15 (Part 2), at 14. In addition, Nan Mavor, caseworker from York County CYS, who last visited Paternal Grandmother's current home on January 23, 2015, reported concerns in the home as to cleanliness and clutter similar to that found in her prior home from where her teenage son was removed.[7] *See* N.T., 2/20/15 (Part 1), at 63-64, 66; N.T., 2/20/15 (Part 2), at 8-10.

Child had been placed with Foster Parents for approximately a year and a half and testimony was presented as to the positive, loving relationship between Child and Foster Parents. *See* N.T., 2/20/15 (Part 2), at 24-25. Agency caseworker Virginia Koser testified:

> It appears [Foster Parents] have a very strong bond with [Child]. Every time that I've seen her with them, she appears to be very comfortable with them, very happy with them. She also has a good relationship with her foster brother, their son, [J.]. I have absolutely no concerns and feel that she's well taken care of and very loved there.

*Id*. at 24. We discern no abuse of discretion.

Turning to the lack of appointment of counsel for Paternal Grandmother, the trial court first noted that Paternal Grandmother did not appeal the dependency order of August 28, 2013 within thirty days, and, as

---

[7] York County CYS case worker, Nan Mavor, confirmed that Paternal Grandmother's teenage son, J., has since been returned to Paternal Grandmother's and his father's custody and dependency has been terminated. *See* N.T., 2/20/15 (Part 1), at 62-63. *See also* Paternal Grandmother's Exhibits 1 and 2.

such, the instant appeal should be quashed as untimely. *See* Trial Court Opinion, 12/23/15, at 17. The court continued, acknowledging that, while parties to a dependency action are entitled to counsel, Paternal Grandmother participated in the August 28, 2013 hearing regarding Child not as a party, but as a witness.[8] *See id*. The court further suggested that Paternal Grandmother waived this issue as she failed to first raise it with the trial court. *See id*. at 17-18. The court stated:

> Furthermore, a review of the record from the August 28, 2013 hearing reveals that [Paternal G]randmother never requested to be represented by counsel, nor made any argument to the [c]ourt about why she was entitled to counsel. Pursuant to Pennsylvania Rule of Appellate Procedure 302(a), any issues not raised in the lower court are waived an cannot be raised for the first time on appeal. In the present case, [Paternal] Grandmother never raised the issue that she should be entitled to counsel before the trial court. Therefore, under Rule 302(a), the issue is waived.

*Id.* (citation omitted). With this last point, we agree.

Paternal Grandmother never raised the lack of counsel with the trial court. In fact, Paternal Grandmother never even requested counsel be appointed on her behalf. Paternal Grandmother, therefore, waived any issue related to appointment of counsel as she failed to first raise it below with the trial court. *See* Pa.R.A.P. 302(a).

Next, as to Paternal Grandmother's exclusion from a June 15, 2015 permanency review proceeding before a Master, the trial court concluded

---

[8] Paternal Grandmother was not a party until the trial court granted her motion to intervene by order dated September 24, 2014.

that, after the granting of her motion to intervene by order entered September 26, 2014, Paternal Grandmother had a right to attend the proceeding and should not have been excluded, except for "good cause" shown. Trial Court Opinion, 12/23/15, at 18. The court conceded "good cause" for exclusion was lacking. **Id**. Nonetheless, the court noted that it entered a subsequent order providing that Paternal Grandmother shall not be excluded from any future proceedings, and that Paternal Grandmother suffered no prejudice. **See id**. The trial court reasoned:

> By virtue of this [c]ourt granting [Paternal] Grandmother's Petition for Intervention, [Paternal] Grandmother became a party to the dependency proceedings at that time. As such, [Paternal] Grandmother had the right to attend any dependency hearing which took place after September 24, 2014, unless good cause is shown why she should be excluded. The record does not reveal why [Paternal] Grandmother was excluded from the June 15, 2015 dependency hearing before the Dependency Master, and the [c]ourt certainly cannot find any "good cause" on the record for such an exclusion. In an attempt to clarify and resolve the situation, this [c]ourt issued an Order on July 7, 2015 stating that [Paternal] Grandmother shall not be excluded from any future dependency matters relating to L.N. Despite [Paternal] Grandmother being wrongfully excluded from the June 15, 2015 hearing, this [c]ourt does not find that [Paternal] Grandmother suffered any resulting harm or prejudice, given the fact that the [c]ourt had already denied her Motion to Modify Placement and ruled that L.N. should stay with [Foster Parents].

**Id**. We agree.

Pennsylvania Rule of Juvenile Court Procedure 1128 provides, in part, as follows with regard to presence at proceedings:

**A. General Rule.** All parties shall be present at any proceeding unless the exceptions of paragraph (B) apply.

**B. Exceptions.**

(1) *Absence from proceedings*. The court may proceed in the absence of a party upon good cause shown except that in no case shall a hearing occur in the absence of a child's attorney. If a child has a guardian *ad litem* and legal counsel, both attorneys shall be present.

(2) *Exclusion from proceedings*. A party may be excluded from a proceeding only for good cause shown. If a party is so excluded, counsel for the party shall be permitted to be present.

Paternal Grandmother became a party to the dependency matter subsequent to the granting of her motion to intervene in September 2014. Pursuant to Pennsylvania Rule of Juvenile Court Procedure 1128, she was therefore entitled to attend all proceedings, including June 15, 2015. The record presents no "good cause" for Paternal Grandmother's exclusion on June 15, 2015. Nevertheless, by order of July 7, 2015, the trial court clarified that Paternal Grandmother shall not be excluded from dependency proceedings during the pendency of the dependency matter. Further, we agree with the trial court that Paternal Grandmother suffered no prejudice as the court had already removed Child from her home by order dated August 28, 2013 and denied her motion to modify placement by order dated April 16, 2015.[9]

Finally, as to lack of notice to Paternal Grandmother regarding Child's adoption by Foster Parents, the trial court indicated that Paternal Grandmother was not a party to the adoption proceedings and was not

---

[9] These orders were entered on August 29, 2013 and April 17, 2015, respectively.

among those who, by statute, must consent to the adoption and be afforded

notice. *See* Trial Court Opinion, 12/23/15, at 19. The court articulated:

> Pennsylvania law provides that "Notice of the [adoption] hearing shall be given to all persons whose consents are required and to such other persons as the court shall direct." 23 Pa.C.S. § 2721. Section 2711 of the Adoption Act contains an exhaustive list of those people whose consent must be given in order for the adoption to take place. 23 Pa.C.S. § 2711. Importantly, the grandparents of the child are not listed among those whose consent is necessary. *Id*. [Paternal] Grandmother's consent was not needed for the adoption under Section 2711 and, as a result, it was not necessary to give [Paternal] Grandmother notice of the proposed adoption under Section 2721. Therefore, this [c]ourt did not err in failing to ensure that [Paternal] Grandmother was given notice of the proposed adoption.

*Id*. Again, we agree.

As the disposition of this issue involves a pure question of law, our

standard of review is de novo, and our scope of review is plenary. *See In re*

*Wilson*, 879 A.2d 199, 214 (Pa. Super. 2005) (*en banc*).

As to those required to consent to an adoption 23 Pa.C.S. § 2711(a)

and (b) provides:

> **(a) General rule.--**Except as otherwise provided in this part, consent to an adoption shall be required of the following:
>
> > (1)   The adoptee, if over 12 years of age.
> >
> > (2) The spouse of the adopting parent, unless they join in the adoption petition.
> >
> > (3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.
> >
> > (4) The guardian of an incapacitated adoptee.

- 12 -

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

**(b) Husband of natural mother.**--The consent of the husband of the mother shall not be necessary if, after notice to the husband, it is proved to the satisfaction of the court by evidence, including testimony of the natural mother, that the husband of the natural mother is not the natural father of the child. Absent such proof, the consent of a former husband of the natural mother shall be required if he was the husband of the natural mother at any time within one year prior to the birth of the adoptee.

In turn, 23 Pa.C.S. § 2721 sets forth as follows as to notice:

The court shall fix a time and place for hearing. Notice of the hearing shall be given to all persons whose consents are required and to such other persons as the court shall direct. Notice to the parent or parents of the adoptee, if required, may be given by the intermediary or someone acting on his behalf. Notice shall be by personal service or by registered mail to the last known address of the person to be notified or in such other manner as the court shall direct.

Here, Paternal Grandmother was not among those statutorily required to consent to and receive notice of adoption. As such, she was not required to be provided notice of Child's adoption by Foster Parents.

Order affirmed.

Judge Jenkins joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2016