J. S83015/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.E.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.O., MOTHER | : | No. 826 WDA 2016 |

Appeal from the Decree, May 12, 2016,
in the Court of Common Pleas of Butler County
Orphans' Court Division at No. O.A. No. 14-2015

| | | |
|---|---|---|
| IN RE: O.R.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.O., MOTHER | : | No. 827 WDA 2016 |

Appeal from the Decree Entered May 12, 2016,
in the Court of Common Pleas of Butler County
Orphans' Court Division at No. O.A. No. 15-2015

| | | |
|---|---|---|
| IN RE: K.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.O., MOTHER | : | No. 851 WDA 2016 |

Appeal from the Order Entered May 11, 2016,
in the Court of Common Pleas of Butler County
Domestic Relations Division at No. CP-10-DP-0000118-2008

| | | |
|---|---|---|
| IN RE: O.R.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.O., MOTHER | : | No. 852 WDA 2016 |

J. S83015/16

Appeal from the Order Entered May 11, 2016,
in the Court of Common Pleas of Butler County
Domestic Relations Division at No. CP-10-DP-0000117-2008

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED DECEMBER 16, 2016**

A.O. ("Mother") appeals from the decrees dated May 10, 2016, and entered May 12, 2016, in the Court of Common Pleas of Butler County, granting the petitions of Butler County Children and Youth Services ("BCCYS") and involuntarily terminating her parental rights to her dependent children, son, K.E.S., born in April of 2005, and daughter, O.R.S., born in November of 2003 (collectively, "Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1] Mother further appeals the orders dated May 10, 2016, and entered May 11, 2016, changing Children's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351. After review, we affirm.

Children were taken into custody and placed in foster care on January 29, 2014, after Mother was arrested on drug-related charges the day prior and Father admitted to BCCYS that he used heroin the day prior and to using and selling from the home, where Children resided. In

---

* Retired Senior Judge assigned to the Superior Court.

[1] By the same decrees, the trial court additionally involuntarily terminated the parental rights of Children's father, Ku.E.S. ("Father"). Father has not filed an appeal and is not a party to the instant appeal.

- 2 -

addition, there was a family history with BCCYS; and Mother's 17-year-old daughter, who also resided in the home,[2] overdosed one to two weeks previous. (Notes of testimony, 4/11/16 at 47-51, 59-60.) Children's detention was upheld at a hearing the following day, January 30, 2014. (Notice of detention and hearing, 1/30/14.)

Thereafter, Children were adjudicated dependent on February 6, 2014. Critically, at the adjudication hearing, Mother admitted the following:

> That on January 28, 2014 she was arrested on drug-related charges and placed in the Butler County Jail. She remains incarcerated and unable to care for her children; that her older child, age 17, also overdosed on heroin and that she has a history with Butler County Children and Youth.

*Id.* at 59-60. Further, Father admitted "[t]hat on January 28, 2014, he used heroin, admitted same to Caseworker Loverick, and he also has a history with Butler County Children and Youth." (*Id.* at 60.) The trial court held a disposition hearing on February 26, 2014; and on February 28, 2014, Children were placed in their current pre-adoptive home. (*Id.* at 143, 154, 158.)

On April 17, 2015, BCCYS filed petitions to involuntarily terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and on April 4, 2016, to change Children's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351. The court then conducted combined

---

[2] Father is not the biological and/or legal father of this child. (Notes of testimony, 4/11/16 at 51.)

termination and goal change hearings on April 5, 2016, and April 11, 2016. In support thereof, BCCYS presented the testimony of the following witnesses: Janice Knapp, Ph.D., licensed psychologist, who conducted a bonding assessment with regard to Children, Mother, and Father, and pre-adoptive resource parents;[3] Brian Emerson Dick, Program Manager of Outpatient Services, Family Pathways; Cindy Ann Webreck, addictions counselor; Ellen O'Brien Geiser Outpatient Treatment Center; Jonibeth Loverick, CYS caseworker; Mary Lou Klemencic, Gateway Rehab; Lyndsay Marie Burrik, Clinical Director, The Care Center; Jessica Dickey, Totin Family Services; Michelle Matthews, Totin Family Services; Duncan Robb, case manager and/or facilitator, Family Pathways; and Laura Gellner, CYS caseworker. Mother and Father each testified on their own behalf. Mother additionally presented the testimony of Y.O., Children's older half-sister; and S.O., Children's maternal grandmother.

On May 11, 2016 and May 12, 2016, the trial court entered orders changing the permanency goal to adoption and decrees involuntarily terminating Mother's parental rights to Children, respectively. Thereafter, on June 8, 2016, Mother, through appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this court consolidated *sua sponte* on June 29, 2016.

---

[3] Dr. Knapp's report, dated November 22, 2015, was marked as Exhibit 2.

On appeal, Mother raises the following issues for our review:

1. Did the Orphans' Court commit an error of law when it determined that the [BCCYS] proved by clear and convincing evidence all the elements of [23 Pa.C.S.A. § 2511(a)(1)], thus justifying the termination of the Appellant's parental rights?

2. Did the Orphans' Court commit an error of law when it determined that the [BCCYS] proved by clear and convincing evidence all the elements of [23 Pa.C.S.A. § 2511(a)(2)], thus justifying the termination of the Appellant's parental rights?

3. Did the Orphans' Court commit an error of law when it determined that the [BCCYS] proved by clear and convincing evidence all the elements of [23 Pa.C.S.A. § 2511(a)(5)], thus justifying the termination of the Appellant's parental rights?

4. Did the Orphans' Court commit an error of law when it determined that the [BCCYS] proved by clear and convincing evidence all the elements of [23 Pa.C.S.A. § 2511(a)(8)], thus justifying the termination of the Appellant's parental rights?

5. Did the Orphan's Court commit an error of law when it determined that [] there was sufficient evidence to support a finding that the termination of parental rights served the best interest and welfare of the child pursuant to [23 Pa.C.S.A. § 2511(b)]?

6. Did the Juvenile Court commit an error of law when it approved the Change of Goal from reunification to adoption for K.E.S. and O.R.S. as recommended by [BCCYS]?

Mother's brief at 9-10.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [] 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc)*. Here, we analyze the court's decision to terminate under Sections 2511(a)(8) and (b), which provide as follows:

**§ 2511.  Grounds for involuntary termination**

**(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b)  Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors

must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa.Super. 2003). "Notably, termination under Section 2511(a)(8)[] does **not** require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa.Super. 2006) (citations omitted) (emphasis in original).[4]

Instantly, the trial court found that Children have been removed from Mother's care for a period exceeding 12 months and Mother has not remedied the conditions that brought Children into care. (Trial court opinion, 8/16/16 at 9.) Likewise, the court reasoned that it would be in Children's best interests to terminate Mother's parental rights, given her inability, along with Father, to provide for Children's safety and stability. (**Id.** at 10.) In finding that BCCYS established grounds for termination of Mother's parental rights under Section 2511(a)(8), the court concluded:

---

[4] We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. **See In re C.L.G.**, 956 A.2d 999, 1009 (Pa.Super. 2008) (**en banc**) ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' . . . they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).")

The credible and undisputed facts indicate by clear and convincing evidence that the children have been removed from the care of the parents by the Court and that 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the children continue to exist and termination of parental rights would best serve the needs and welfare of the child. The children have been in placement for twenty-one months. Children were detained due to drug use by both parents and their inability to care for their children and their special needs. . . . Mother completed some drug and alcohol treatment and mental health treatment while in prison. Since her release from prison, Mother has not consistently attended treatment for drug and alcohol or mental health and has had two relapses since November 2015. Mother and Father continue to struggle with the same issues of drug and alcohol and mental health that predicated the removal of the children from their home.

Mother and Father cannot provide safe, stable, or long-term care for Children. They are not involved in mental health counseling, they have histories of drug abuse, recent positive drug screens, and no strong social support group. These children require a high degree of structure, which Mother and Father are not able to provide as they are not even aware that they are not so providing. There is a high risk of return to protective care if Children are returned home to their Mother and Father. They have been at the [resource family] home for twenty-one months in a very structured environment. Since their placement, there has been a dramatic improvement of Children at home and school.

Therefore, [BCCYS] has proven by clear and convincing evidence that the statutory grounds of § 2511(a)(8) have been met, and the Court turns to a review of whether terminating Father['s] and Mother's parental rights would meet the needs and welfare of Child[ren].

Children have a bond with Mother and Father, especially their Mother. The children also have a close bond with the resource family. However, Children do not feel safe in their parent's care and Mother and Father are unable to provide Children with the high level of structure they require. Their behavior has improved dramatically since they have been with [their resource family], and Children are close with their foster parents and their foster siblings. The children have expressed that they love their [M]other, but would also be happy to be adopted by [their resource family]. The evidence would support that there would be some emotional harm to Children in terminating the bond, however, the benefits of permanency and stability through the adoption by the resource family outweighs any harm.

The Court has given primary consideration to the developmental, physical, and emotional needs and welfare of Children and determines that the needs and welfare of Children are best met by the termination of Father['s] and Mother's parental rights and subsequent adoption by the resource family. As such, it is in Children's best interest that Father and Mother's parental rights are terminated to allow for adoption by the [resource family].

Trial court opinion, 8/16/16 at 9-10.

Mother, however, argues that the conditions that led to the removal of Children from her care no longer exist. (Mother's brief at 24.) Mother avers that she completed that which was required of her during her incarceration and after her release. (*Id.* at 24-25.) She states that she "has clearly resolved the issues that led to the detention of the children as she is no longer incarcerated, has maintained her anxiety medication and remains in drug and alcohol treatment. There was no evidence to establish that the conditions that led to the children's detention still exist." (*Id.* at 26.)

- 11 -

Moreover, Mother contends that termination of her parental rights would not best serve Children's needs and welfare. (*Id.*) Mother references that, while it was reported that Children expressed safety concerns as to Mother and Father, no concerns were actually related to Mother.[5] (*Id.* at 26-27.) Similarly, Mother maintains that no evidence was presented to corroborate a lack of structure in her home. (*Id.* at 27.) We disagree.

Upon review, the record supports the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(8). The record substantiates that Children have been removed from parental care for a period exceeding 12 months and that the reasons for removal persisted. Children were removed from Mother and Father's care on January 29, 2014, a period of over two years at the time of the hearing, due to drug-related issues. (Notes of testimony, 4/11/16 at 47-51.) Although Mother completed drug and alcohol treatment while incarcerated, Mother had not completed either drug and alcohol or mental health treatment subsequent to her release from incarceration in July 2015. (*Id.* at 142, 148-149, 162-163, 198-199.) Mother had not completed and was not enrolled in mental health treatment, having been discharged in December 2015 for attendance

---

[5] Children conveyed concerns related to lack of structure, yelling and cursing, smoking, scary movies, and Father's drinking. (Exhibit 2 at 25; notes of testimony, 4/5/16 at 50, 87.)

issues.[6] (*Id.* at 19-20, 29-30, 149.) However, while Mother completed a drug and alcohol evaluation and was enrolled in an outpatient drug relapse prevention program, Mother had been placed on medical leave; and although scheduled to return to group and individual sessions in the weeks prior to hearing, Mother failed to appear and/or cancelled these sessions.[7] (*Id.* at 43, 148-149, 164-165, 200-201.) Significantly, Mother's counselor, Cindy Webreck, testified to Mother's "struggle with attendance and minimization and denial." (*Id.* at 40.) Further, Ms. Webreck noted that the fact that Mother had undergone a recent surgery created a "significant risk" to her recovery and was unable to provide a prognosis. (*Id.*) In addition, not only did Mother admit to a drink of alcohol in the beginning of November 2015 and test positive for opiates on two occasions, once in November 2015, and then again in January 2016,[8] Mother missed several drug screens during this time period. (*Id.* at 41, 106-109.) Moreover, aside from two screens conducted by her drug relapse prevention program, which were negative,

---

[6] As Mother had been prescribed medication for anxiety while incarcerated, it was recommended that she seek mental health treatment for medication management. (Notes of testimony, 4/11/16 at 148-149.) In spite of Mother's dismissal of the necessity for therapy, Family Pathways required therapy sessions as a part of their program. Moreover, Mother was not discharged without consultation with BCCYS. (*Id.* at 20, 25-26, 29-30.)

[7] At the time of hearing, Mother was scheduled to return later that week. (*Id.* at 43, 201.)

[8] Mother admitted to taking pain medication that had been prescribed prior to her incarceration. (*Id.* at 205-206.)

Mother presented for only one other drug screen in the beginning of March 2016.[9] (*Id.* at 41, 43, 110.) Mother again tested positive due to medication from a recent surgery. (*Id.* at 150.)

Likewise, the record supports the trial court's finding that terminating Mother's parental rights would best serve the needs and welfare of Children. Critically, despite a bond with Mother, Dr. Knapp opined this was not a secure attachment due to a "lack of rules or structure" and "inability to provide safe, stable and appropriate long-term care." (Notes of testimony, 4/5/16 at 49-52, 86-87, 98.) As a result, Dr. Knapp observed Children were "at a rather high risk of requiring placement back in the protective care should they return home. . . ." (*Id.* at 52.) Dr. Knapp, however, indicated a strong, secure attachment to pre-adoptive resource parents, with whom Children, both of whom have special needs,[10] had been placed for over two years and who provided Children "a very stable and structured environment, very supportive." (*Id.* at 53.) In fact, improvements were noted with regard to Children's behavior and performance in school. (*Id.* at 16-17, 53) This positive relationship was echoed by Family Pathways case manager, Duncan Robb, who monitored Children's placement, and CYS caseworker

---

[9] Mother was required to be drug tested weekly through Totin Family Services. (Notes of testimony, 4/11/16 at 171-172.)

[10] Both children have been diagnosed ADHD. Additionally, K.E.S. has been diagnosed with anxiety disorder, and O.R.S. has been diagnosed on the autism spectrum. (Exhibit 2 at 9; notes of testimony, 4/5/16 at 17-18.)

Laura Gellner. (Notes of testimony, 4/11/16 at 127-129, 130-131, 135, 154-158.) Regardless of any harm that would result from terminating Mother's parental rights, Dr. Knapp emphasized Children's positive relationship and bond with pre-adoptive resource parents and the stability and safety they afforded Children. (Notes of testimony, 4/5/16 at 56.) Dr. Knapp testified as follows:

> Q. In your observations and information that you've gathered, if the Court were to terminate parental rights of the birth parents, would the bond and the security that the children have with the resource family outweigh the trauma or stress experienced by the children?
>
> A. It does appear, from everything -- from all of the data I have collected, that the children do feel very secure and safe with [resource parents], that they feel very bonded, that they have a close relationship. It will -- undoubtedly would be -- would, you know, cause some distress to the children. They do both love their parents. But it does appear that they would feel much more safe and secure with [resource parents].

*Id.*[11] Thus, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Children pursuant to Section 2511(a)(8).

---

[11] While Dr. Knapp testified that this assessment was completed with Mother and Father residing together as a couple, subsequent to Mother's release from incarceration (notes of testimony, 4/5/16 at 88-89), no evidence was presented that Mother and Father's reported separation would change her opinion.

We next determine whether termination was proper under Section 2511(b). With regard to Section 2511(b), we have stated as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015), quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

As explained above, our review of the record confirms that terminating Mother's parental rights will best serve the needs and welfare of Children.

As indicated, evidence was presented that Children, both of whom have special needs, lacked a secure attachment with Mother, due to a lack of safety and structure, which Children possessed with pre-adoptive resource parents, with whom they had resided for over two years. (Notes of testimony, 4/5/16 at 49-53, 56, 86-87, 98.) Since placed with pre-adoptive resource parents, improvements were noted with regard to Children's behavior and performance in school. (*Id.* at 53.) Further, Children had a high likelihood of once again being placed in protective custody if returned home. (*Id.* at 52.) As this court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *R.J.S.,* 901 A.2d at 513.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(8) and (b).

Lastly, we turn to the question of whether the trial court appropriately changed the permanency goal to adoption. In so doing, our standard of review is the same abuse of discretion standard as noted above. *See In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015), citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010), for the proposition that the abuse of discretion standard applies in a dependency matter. Further, following an

examination and findings of factors provided in 42 Pa.C.S.A. § 6351(f) and (f.1), regarding matters to be determined at the permanency hearing, the trial court must also find that a goal change is in Children's best interests. *See* 42 Pa.C.S.A. § 6351(g); *In re R.J.T.*, 9 A.3d 1179 (Pa. 2010).

The primary purpose of the disposition of a dependent child is to examine what is in the best interest of the child. 42 Pa.C.S.A. § 6351(a); *In the Interest of Z.W., et al.*, 710 A.2d 1176, 1178 (Pa.Super. 1998). *See also In re Tameka M.*, 580 A.2d 750, 753 (Pa. 1990) (stating, "In ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, . . . rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests," quoting *In re Lowry*, 484 A.2d 383, 386 (Pa. 1984)).

In the case at bar, Mother posits that the trial court should not have changed Children's permanency goal to adoption, as "the main rationale behind the goal change was the fact that the Court issued an order terminating [Mother]'s parental rights." (Mother's brief at 30.) Mother avers that there was a lack of evidence supporting those factors set forth by Section 6351(f). (*Id.*) However, upon review of the record, Mother's claim lacks merit. The record reveals that a change of the permanency goal to adoption was in Children's best interests. Mother had "relapsed" and tested positive for drugs, and had not successfully completed drug and alcohol

and/or mental health treatment. (Notes of testimony, 4/11/16 at 41, 43, 106-109.) Moreover, Dr. Knapp testified that Children, who both have special needs, lacked a secure attachment with Mother, referencing an absence of safety and structure, which Children enjoyed with their pre-adoptive resource parents. (Notes of testimony, 4/5/16 at 49-53, 56, 86-87, 98.) Therefore, the record supports that a goal change was in the best interests of Children. Accordingly, after review of the record, we again discern no abuse of discretion, and conclude that the trial court properly changed Children's permanency goal to adoption.

Based on the foregoing analysis of the trial court's termination of Mother's parental rights and change of Children's permanency goal, we affirm the decrees and orders of the trial court.

Decrees and orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016