J-S13032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.I.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | No. 2234 EDA 2016 |

Appeal from the Decree June 8, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000447-2016,
CP-51-DP-0001145-2013, FID: 51-FN-001146-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | No. 2237 EDA 2016 |

Appeal from the Decree June 8, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000448-2016,
CP-51-DP-0001143-2013, FID: 51-FN-001146-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.W., MOTHER | : | No. 2239 EDA 2016 |

Appeal from the Decree June 8, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000449-2016,
CP-51-DP-0001144-2013, FID: 51-FN-001146-2013

J-S13032-17

BEFORE:   BENDER, P.J.E., LAZARUS, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:                 **FILED APRIL 10, 2017**

C.W. ("Mother") appeals from the consolidated decrees involuntarily terminating[1] her parental rights to her three minor children—Z.S.B., a female born in March 2009, Z.A.B., a male born in January 2008, and Z.I.B., a female born in December of 2004 (collectively, the "Children")—and changing Children's permanency goal to adoption.[2]  We affirm.

The trial court summarized the relevant factual and procedural history, as follows:

> In March of 2013, [the Philadelphia County Department of Human Services ("DHS"),] pursuant to a substantiated General Protective Services (GPS) report, found Z.S.B. and Z.A.B. to be truant.
>
> On May 20, 2013, an Adjudicatory Hearing was held to address the truancy issue.  The [c]ourt ordered [Mother] to provide DHS with a name and address of the landlord,

---

[*] Former Justice specially assigned to the Superior Court.

[1] By decrees entered on the same date, the trial court terminated the parental rights of unknown father as to Children.  No unknown father has filed an appeal or is a party to the present appeal.

[2] Although the notes of testimony reflect that the trial court granted the goal change to adoption, the permanency review orders for this date still indicate the current permanent placement goal is return to parent or guardian.  N.T., 6/8/16, at 45-47; Permanency Review Orders, 6/8/16.  However, the orders do note the case transfer to adoptions.  Permanency Review Orders, 6/8/16. Further, upon review of the certified record, the subsequent permanency review orders reflect the current placement goal has been adoption.  Any potential procedural error is, therefore, corrected.  **See** Pa.R.A.P. 905(a)(5) (stating that the premature filing of a notice of appeal would be treated as proper once a final, appealable order was entered).

- 2 -

and comply with Family Stabilization Services (FSS), DHS and child advocate.

On May 31, 2013, DHS went to the address Mother provided in [c]ourt to assess the home. DHS was informed by Mother's landlord[] [that] Mother and [C]hildren[] had been evicted more than three weeks prior to the visit. DHS subsequently reported this information to the Honorable Vincent L. Johnson[,] who then ordered DHS to obtain an Order of Protective Custody (OPC). DHS attempted to locate the [C]hildren for placement, without success.

On June 4, 2013, Z.S.B., Z.A.B., and Z.I.B. were placed in foster care through Bethanna.

On June 5, 2013, a Shelter Care Hearing was held for [] Z.S.B., Z.A.B., and Z.I.B., the OPC was lifted and the temporary commitment to DHS was ordered to stand. Mother failed to attend the court hearing. The identity of father of Z.S.B., Z.A.B.[,] and Z.I.B. remained unknown to DHS.

On July 8, 2013, an [A]djudicatory [H]earing was held for Z.S.B., Z.A.B.[,] and Z.I.B. The [c]ourt discharged the [C]hildren's temporary commitment and adjudicated [C]hildren dependent based on present inability to provide proper parental care and control. The [c]ourt committed the [C]hildren to the custody of DHS. The Honorable Vincent Johnson ordered Mother to be evaluated and complete a drug and alcohol assessment at the Clinical Evaluation Unit ("CEU") on August 27, 2013.

At the Permanency Hearing held on October 1, 2013, the [c]ourt found that [Children's] placement continued to be necessary and appropriate and ordered they remain committed. Mother was order[ed] to comply with [a] parenting capacity evaluation, continue services through the Achieving Reunification Center (ARC) and was re-referred to CEU for a forthwith drug screen, assessment and monitoring.

On October 1, 2013, the CEU completed a Report of Non-compliance as to Mother. Mother failed to submit a

forthwith drug screen pursuant to court order dated August 27, 2013 and fail[ed] to attend a scheduled CEU appointment on September 30, 2013.

On December 17, 2013, the CEU completed a Report of Non-compliance as to Mother. The report stated Mother did not comply with the Honorable Vincent Johnson's October 1, 2013 court order requiring her to complete a drug and alcohol assessment with the CEU. Mother failed to attend another scheduled appointment on November 13, 2013 and failed to contact CEU.

At the Permanency Hearings held on March 24, 2014 and June 23, 2014, respectively, Mother was re-referred to the CEU for monitoring for her intensive outpatient treatment through STOP [("Sobriety Through Outpatient")]. BHS [("Behavioral Health Services")] was ordered to monitor Mother's mental health treatment. Mother failed to attend hearings.

In December 2014, [ARC] completed a Parent/Caregiver Closing Summary Report for Mother indicating her case was closed for non-participation in ARC services and unsuccessful outreach to mother. The reasons stated were Mother did not complete the goal of housing, drug and alcohol treatment attendance, nor mental health. In addition, Mother's visitation with the [C]hildren was subsequently modified to be supervised visitation due to an incident at a visit caused by [M]other's inappropriate behavior.

At the [P]ermanency [H]earings held between February 27, 2015 and November 20, 2015[,] the [C]hildren were ordered to remain as committed.

According to CEU reports, Mother tested positive for marijuana on May 29, 2015.

On August 20, 2015, the CEU completed a progress report for Mother. The report stated Mother failed to attend her scheduled assessment on July 1, 2015, failed to contact the CEU and failed to complete a drug and alcohol assessment with the CEU.

On September 11, 2015, Mother tested positive for marijuana.

The matter was [ ] listed on a regular basis before judges of the Philadelphia Court of Common Pleas-Family Court Division-Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 [Pa.C.S. §] 6351, and evaluated for the purpose of determining and reviewing the permanency plan of the [C]hild[ren].

In subsequent hearings, the Dependency Review Orders reflect the [c]ourt's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

Trial Ct. Op., 10/19/16, at 1-3.

On May 19, 2016, DHS filed petitions to involuntarily terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and to change Children's permanency goal to adoption pursuant to 42 Pa.C.S. § 6351. The court conducted a combined termination and goal change hearing on June 8, 2016. In support thereof, DHS presented the testimony of William Johnson, a Community Umbrella Agency ("CUA") case manager at Northeast Treatment Center ("NET"). In addition, the parties stipulated that CUA would testify as to the facts alleged in the petitions. N.T. at 4. DHS also offered DHS Exhibits 1-7, which were admitted without objection. *Id.* at 39. Mother testified on her own behalf.

Following the hearing on June 8, 2016, the trial court entered the decrees involuntarily terminating Mother's parental rights to Children and the orders changing the permanency goal to adoption. Thereafter, on July 6, 2016, Mother, through counsel, filed timely notices of appeal, along with

concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), This Court consolidated the appeals *sua sponte* on August 9, 2016.

On appeal, Mother raises the following issues for our review:

1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights under 23 [Pa.C.S.] § 2511 (a)(1), where the evidence showed that Mother substantially complied with the Family Service Plan goals established by [DHS]?

2. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights under 23 [Pa.C.S.] § 2511 (a)(2), (5), and (8) where [DHS] failed to prove by clear and convincing evidence that Mother's conduct warranted involuntary termination?

3. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights without fully considering the impact of termination on the emotional needs and welfare of the Children, as required under 23 [Pa.C.S.] § 2511(b)?

4. Did the trial court commit an error of law and abuse of discretion by changing the goal for all three Children from reunification to adoption when DHS failed to present clear and convincing evidence that such a goal change was in the Children's best interests?

5. Did the trial court commit an error of law and abuse of discretion when it inappropriately relied on unauthenticated drug screen evidence at the hearing to terminate the parental rights of Mother and change the Children's permanency goal to adoption?

Mother's Brief at 2-3.[3]

Mother, in her first two arguments, claims that DHS did not meet its burden of proof for terminating her parental rights under Section 2511(a). Mother asserts, "[t]he weight of the evidence suggests that the conditions that led to the [C]hildren's placement have been rectified, and Mother has progressed toward reunification." Mother's Brief at 13. As related to her objectives, Mother highlights that she obtained housing, completed a parenting capacity evaluation, participated in mental health treatment and had an appointment scheduled to re-commence treatment, and completed "at least some" CEU drug screens. *Id.* at 14-15. Further, as recommended through her parenting capacity evaluation, Mother obtained employment and received some anger management counseling. *Id.* at 15. Mother, therefore, posits that she was "satisfactorily working toward reunification."

---

[3] We observe that, in her brief, Mother states her issues on appeal somewhat differently from her Rule 1925(b) Statement. We, nevertheless, find that Mother has preserved her challenge to the sufficiency of the evidence as to the termination of her parental rights and opposition to the goal change. We conclude, however, that any issue regarding the failure of DHS to provide reasonable efforts would be waived, as Mother failed to raise this issue in the statement of questions involved section of her brief and/or discuss and argue this issue in her brief. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citations and quotation marks omitted)); *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

*Id.* In addition, Mother contends DHS failed to establish her drug use was continuing and improperly shifted the burden of proof to her. *Id.* at 15-16, 21-23. Mother concludes DHS failed to present clear and convincing evidence to support termination of her parental rights. We disagree.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). Clear and convincing evidence is that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). We have held that in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a). *In re B.L.W.*, 843

A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's

decision to terminate under Section 2511(a)(8), which provides as follows:

> **(a) General rule.**—The rights of a parent in regard to a
> child may be terminated after a petition filed on any of the
> following grounds:
>
> \* \* \*
>
> (8) The child has been removed from the care of the
> parent by the court or under a voluntary agreement
> with an agency, 12 months or more have elapsed from
> the date of removal or placement, the conditions which
> led to the removal or placement of the child continue to
> exist and termination of parental rights would best
> serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8).

> In order to terminate parental rights pursuant to 23
> Pa.C.S.[] § 2511(a)(8), the following factors must be
> demonstrated: (1) The child has been removed from
> parental care for 12 months or more from the date of
> removal; (2) the conditions which led to the removal or
> placement of the child continue to exist; and (3)
> termination of parental rights would best serve the needs
> and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Once the twelve-month period has been established, the court must

next determine whether the conditions that led to the child's removal

continue to exist, despite the reasonable good faith efforts of the agency

supplied over a realistic period. *In re A.R.*, 837 A.2d 560, 564 (Pa. Super.

2003). The "relevant inquiry in this regard is whether the conditions that led

to removal have been remedied and thus whether reunification of parent and

child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.

Super. 2009) (citation omitted). "Notably, termination under Section 2511(a)(8)[] does **not** require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." ***In re Adoption of R.J.S.***, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted).

Instantly, in finding sufficient evidence supporting termination pursuant to Section 2511(a)(8), the court recognized that Mother "failed to complete any of the objectives" established for her in an effort to promote and achieve reunification with Children. Trial Ct. Op. at 4. Moreover, Mother was self-medicating for anxiety with marijuana. ***Id.***

Upon review, the record supports the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(8). The record substantiates that Children have been removed from parental care for a period exceeding twelve months and that the reasons for removal persisted. Children were removed from Mother's care in June of 2013, a period of approximately three years at the time of the hearing. N.T. at 11; Shelter Care Orders, 6/4/13.

In addition, Mother failed to complete all of her case goals, which included visitation, suitable housing, a parenting capacity evaluation, mental health treatment, and drug and alcohol screening and/or assessment and treatment. N.T. at 12, 18. Mother's visitation with Children remained supervised since December of 2014. ***Id.*** at 16. The supervision of visitation

was a result of Mother's displays of anger toward the prior CUA case worker in front of Children. *Id.* Mother also missed visits in November and December 2015 due to her failure to convey her work schedule. *Id.* at 26. Mother was not compliant with all aspects of and/or recommendations resulting from her parenting capacity evaluation, such as individual therapy, family therapy, medication management, and a substance evaluation. *Id.* at 20-22. Mother was not actively engaged in mental health treatment.[4] Mother failed to complete a drug and alcohol program and was non-compliant with CEU.[5] *Id.* at 16, 20. Although Mother completed some drug screens at CEU, Mother tested positive for marijuana as recently as April 4, 2016. *Id.* at 16, 18; *see also* DHS Ex. 6, Progress Report 4/29/16. Further, at her last drug screen on June 7, 2016, the day prior to the termination/goal change hearing, Mother's marijuana level was 49, with the cutoff for a positive result being 50. *Id.* at 17-18. Additionally, her creatinine level suggested dilution.[6] *Id.*

---

[4] An appointment to resume treatment was reportedly scheduled for June 20, 2016, approximately one month after the filing of the petitions to terminate Mother's parental rights. N.T. at 20.

[5] Of particular concern to the trial court was Mother's failure to complete her objectives related to mental health and drug and alcohol treatment. N.T. at 31-33. Mother had last participated in mental health as well as drug and alcohol treatment in 2015. *Id.* at 13-14, 15.

[6] Despite discussion at the hearing of the addition of the most recent CEU report to DHS Exhibit 6, N.T. at 17, a review of the certified record reveals that the report was omitted.

Likewise, the record supports the trial court's finding that terminating Mother's parental rights would best serve the needs and welfare of Children under Section 2511(a)(8). Erica Williams, Psy.D., and Alexandra Vandegrift, B.A., who conducted Mother's parenting capacity evaluation and issued a report dated June 16, 2015,[7] observed Mother's inability to provide for Children's permanency and safety at the time. DHS Ex. 7 at 8. They indicated "[Mother] is demonstrating progress, however, there continues to be barriers leading to [Mother] not currently presenting with the capacity to provide safety and permanency to her [C]hildren." *Id.* Critically, Dr. Williams and Ms. Vandegrift reference Mother's non-compliance with drug screening and use of marijuana for anxiety. *Id.* Similarly, Mr. Johnson, the CUA case manager, testified that he would not reunify Mother and Children, expressing safety concerns. N.T. at 18. He stated, "My concerns would be just the overall safety for the case—the overall safety for the [C]hildren, mom's safety and making sure that she's able to take care of everything she needs to take care of for herself, as well as the children." *Id.* Thus, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Children pursuant to Section 2511(a)(8).

_____

[7] The parenting capacity report was marked and admitted as DHS Exhibit 7.

Mother next argues that the trial court's termination did not consider Children's best interests or the impact on their emotional needs and welfare under Section 2511(b). Mother's Brief at 24. Specifically, Mother acknowledges that the CUA case manager testified to no detrimental impact on Children if Mother's parental rights were terminated. However, Mother asserts a lack of support for this testimony other than her non-completion of goals. *Id.* Mother contends that a bond existed between her and Children, that the court ignored the importance of Children's emotional bond with Mother, and that the court instead focused on their bond with foster parents. *Id.* at 25-26. Moreover, Mother maintains the court also ignored Children's relationship with one another as Children were not placed in a single foster home. *Id.* at 27. As such, Mother maintains "[t]he court did not adequately consider the impact that severing the Children's bond with their Mother and with each other would have on the emotional welfare of the Children." *Id.* Mother concludes that termination of her parental rights under Section 2511(b) was not supported by clear and convincing evidence. We disagree.

Section 2511(b) provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b). With regard to Section 2511(b), we have stated:

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citations and quotation marks omitted).

Instantly, Children have been in their current foster homes since January 2015.[8] N.T. at 18. Mr. Johnson testified that, although Children have a bond with Mother, their parent-child relationship is with their respective foster parents. *Id.* at 25, 28-30. Foster parents, as opposed to

---

[8] Z.I.B and Z.S.B. are placed together, separately from Z.A.B. N.T. at 4-5.

Mother, provide for Children's financial, medical, and daily needs, as well as taking them to the doctor or therapist. *Id.* at 24-25, 27-29. As a result, despite the fact that Children would be upset if they were not able to see Mother again, Mr. Johnson opined that there would be no detrimental impact on Children if Mother's parental rights were terminated. *Id.* at 24-25, 30-31. In fact, Mr. Johnson testified that he had concerns about Children's overall safety if they were reunited with Mother. *Id.* at 17-19. Referencing Mother's lack of completion of her established goals, Mr. Johnson asserted, "[i]t would be in the best interest for the [C]hildren to actually be able to flourish outside of worrying about what needs to transpire here with mom." *Id.* at 24-25.

Our review of the record confirms that terminating Mother's parental rights will best serve the needs and welfare of Children. Evidence was presented that Mr. Johnson had concerns with regard to Children's safety if they were to be returned to Mother. *Id.* at 18. Likewise, a parenting capacity evaluation revealed that Mother was unable to provide for Children's safety and permanency. DHS Ex. 7 at 8. Further, while Children have a bond with Mother, Children have more of a parent-child relationship with their foster parents, who provide for their needs. N.T. at 24-25, 27-30. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a

- 16 -

child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d at 513. Accordingly, we find no abuse of discretion in the court terminating Mother's parental rights under 23 Pa.C.S. § 2511(b).

Mother's next argument focuses on the trial court's decision to change Children's permanency goal to adoption. Mother claims that the trial court should not have changed the goal to adoption, as the "testimony at trial demonstrated that the Children enjoy a loving relationship with their Mother, and are bonded to their Mother." Mother's Brief at 28. Mother also points to the fact that Children will lose their relationships with one another given they are placed and would be adopted separately. *Id.* Hence, Mother avers goal change to adoption is not in Children's best interest and does not serve their needs and welfare. *Id.* We discern no basis in these arguments to disturb the trial court's ruling.

We review a goal change for an abuse of discretion. *See In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). The trial court must examine and find the factors provided in 42 Pa.C.S. § 6351(f) and (f.1), regarding matters to be determined at the permanency hearing, and that a goal change is in Children's best interests. *See* 42 Pa.C.S. § 6351(g); *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

The primary purpose of the disposition of a dependent child is to examine what is in the best interest of the child. *See* 42 Pa.C.S. § 6351(a);

*Z.W. v. Tioga Cnty. Servs. Agency*, 710 A.2d 1176, 1178 (Pa. Super. 1998); *see also In re Tameka M.*, 580 A.2d 750, 753 (Pa. 1990) ("[I]n ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, . . . rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests." (citation and quotation marks omitted)).

Here, the record reveals that a change of the permanency goal to adoption was in Children's best interests. Mother had not successfully completed and was not currently enrolled in mental health and/or drug and alcohol treatment. N.T. at 20. Mother apparently tested positive for marijuana on April 4, 2016, and on June 7, 2016, a mere day before the relevant hearing, Mother's levels for marijuana were just below the cut-off with evidence of dilution. *Id.* at 16-18. Moreover, not only did the CUA case manager express safety concerns when questioned about reunification, *id.* at 18, but a parenting capacity evaluation revealed Mother's inability to provide for Children's safety and permanency. DHS Ex. 7 at 8. Notably, the parenting capacity evaluation highlighted Mother's marijuana use. *Id.* Additionally, despite a bond with Mother, Children's parent-child relationship is with their foster parents. N.T. at 25, 28-30. Thus, a goal change was in the best interests of Children. Accordingly, the court did not abuse its discretion in changing Children's permanency goal to adoption.

In her final issue, Mother argues that the trial court "commit[ted] an error of law and abuse of discretion when it inappropriately relied on unauthenticated drug screen evidence" at the hearing. Mother's Brief at 3. We find Mother has waived this issue, as she failed to raise it with the trial court. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995) (stating that failure to make timely and specific objection before trial court will result in waiver of that issue for appellate review, and this Court will not consider any claim that could have been corrected in trial court). Mother failed to object during the hearing when this evidence was referenced in testimony, and failed to object when the evidence was submitted for admission at the conclusion of the hearing. N.T. at 16-18, 39. Thus, this claim is waived. Accordingly, we affirm the decrees of the trial court.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2017