J. S25032/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  S.Q.L., : IN THE SUPERIOR COURT OF
A MINOR : PENNSYLVANIA
 :
APPEAL OF:  M.L., MOTHER : No. 3238 EDA 2016

Appeal from the Decree, September 14, 2016,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0000533-2016,
CP-51-DP-0000744-2014

IN THE INTEREST OF:  A.L., : IN THE SUPERIOR COURT OF
A MINOR : PENNSYLVANIA
 :
APPEAL OF:  M.L., MOTHER : No. 3240 EDA 2016

Appeal from the Decree, September 14, 2016,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0000532-2016,
CP-51-DP-0000746-2014

BEFORE:  BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED MAY 26, 2017**

M.L. ("Mother") appeals from the decrees entered September 14, 2016, in the Court of Common Pleas of Philadelphia County, granting the petition of the Philadelphia County Department of Human Services ("DHS") and involuntarily terminating her parental rights to her minor, dependent children, S.Q.L., a male born in August of 2009, and A.L., a female born in October of 2007 (collectively, the "Children"), pursuant to the Adoption Act,

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1] [2] Mother further appeals the orders entered September 14, 2016, changing the Children's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351. After review, we affirm.

The trial court summarized the relevant procedural and factual history as follows:

> The family in this case has been known to DHS since 2010.[3] Between 2010 and 2014, DHS received four General Protective Services ("GPS") reports alleging problems in the home.[4] All four reports were substantiated, and DHS offered services. On February 6, 2014, DHS received another GPS report that the utilities in Mother's home were turned off. DHS visited the home and found it was filled with trash, smelled of marijuana and had no heat.[5] The Children were truant. By family arrangement, DHS implemented a Safety Plan and the Children moved into the home of their maternal cousin. On March 25, 2014, Mother met with DHS and the

---

[1] By separate decrees entered June 27, 2016, the trial court involuntarily terminated the parental rights of the Children's fathers and/or putative fathers, also pursuant to Section 2511(a)(1), (2), (5), (8), and (b). Neither of the Children's fathers and/or putative fathers has appealed, nor are they parties to this appeal.

[2] Mother's three older children, who are not the subject of this matter, were also adjudicated dependent and remained committed and in placement.

[3] Upon review of the certified record, DHS's involvement goes back even further, to May of 2008. (*See* DHS Exhibit 1.)

[4] DHS received reports on September 7, 2010, May 28, 2011, February 6, 2014, and February 9, 2014, with respect to conditions of the home and neglect of the Children. (*See* DHS Exhibits 2, 3, 4, and 5.)

[5] DHS received a similar report as to the conditions of the home, among other things, on February 9, 2014. (*See* DHS Exhibit 5.)

Community Umbrella Agency ("CUA") and stated she intended to take the Children back into her care. DHS obtained an Order of Protective Custody ("OPC") and formally placed the Children with the cousin. The following day the cousin stated she could not care for the Children, so DHS placed them in other foster homes. Following an adjudicatory hearing on April 9, 2014, the court adjudicated the Children dependent and fully committed them to DHS custody. CUA then developed a Single Case Plan ("SCP") with objectives for Mother. Between 2014 and 2016, Mother failed to complete her objectives. . . .

Trial court opinion, 12/1/16 at 1-2 (citations to record omitted).

The trial court held regular permanency review hearings in this matter. Throughout these reviews, the trial court maintained the Children's commitment and placement and permanency goal.

On June 10, 2016, DHS filed petitions to involuntarily terminate parental rights and for a goal change. Thereafter, the trial court conducted combined termination and goal change hearings on June 27, 2016 and September 14, 2016.[6] In support of its petitions, DHS presented the testimony of CUA caseworker, Lloyd Guyton. Further, DHS offered DHS Exhibits 1 through 17, which were admitted into evidence on June 27, 2016. (Notes of testimony, 6/27/16 at 86.) Counsel stipulated to their content,

---

[6] Mother agreed to sign voluntary relinquishments of her parental rights to the Children at the June 27 hearing. Mother signed the necessary paperwork subsequent to the submission of evidence and testimony being taken on the termination/goal change petitions. The matter was, however, listed for September 14, 2016, for the court to issue its decision on the termination/goal change petitions should Mother revoke the voluntary relinquishments, which she in fact did, in the requisite 30 days.

but not their veracity. (*Id.* at 20-21, 37.) Mother additionally testified on her own behalf. Children's fathers were not present. However, putative father for both Children, S.P.B., Jr., a/k/a S.B., a/k/a S.B., who is incarcerated and was represented by counsel, was contacted via telephone and chose not to participate.[7]

By decree entered September 14, 2016, the trial court involuntarily terminated Mother's parental rights to the Children.[8] On October 10, 2016, Mother, through appointed counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues for our review:

> 1. Whether the trial court abused its discretion by granting [DHS]'s Petition to Change the Goal to Adoption?
>
> 2. Whether the trial court abused its discretion by finding that DHS proved by clear and convincing evidence that [M]other failed to rehabilitate herself pursuant to 23 Pa.C.S.A. Section 2511[(a)(1), (2), (5), and (8)]?
>
> 3. Whether the trial court abused its discretion by finding that DHS proved by clear and convincing evidence that it would not harm A.L. and/or S.Q.L. to be severed from their mother and that it was in the best interests of

---

[7] A.L.'s father, D.F., was represented by counsel. S.Q.L.'s father, A.P., was not represented by counsel as an address was never obtained. (Notes of testimony, 6/27/16 at 19-20.)

[8] The trial court announced its decision, memorialized by subsequent decrees and orders, on the record on September 14, 2016.

>the children to be adopted pursuant to 23 Pa.C.S.A. Section 2511(b)?
>
>4. Whether the trial court abused its discretion in failing to consider that [M]other completed all her family service plan goals in 2015, and that after the additional goal of "mental health" was added in 2015, [M]other had made substantial progress with this goal despite the fact that DHS made no referral and provided no assistance to her.

Mother's brief at 4.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

>The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f

competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998).

With regard to Mother's second, third, and fourth issues, which we address first, Mother essentially challenges the sufficiency of the evidence in terminating her parental rights. (Mother's brief at 13-18.) In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of

> the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

Instantly, in finding sufficient evidence supporting termination of Mother's parental rights pursuant to Section 2511(a)(2), the court stated as follows:

> The Children have been in care since April 9, 2014. Mother's original objectives were to visit the Children, obtain housing and a job, complete parenting classes and a PCE [("parenting capacity evaluation")]. Mother obtained appropriate housing. Mother has never provided documentation of her income. While Mother completed parenting classes, she was completely unable to demonstrate that she learned anything from them. Even after the classes, she did not have the capacity to provide the Children with a safe and permanent home. During the PCE, Mother minimized and denied the issues that brought the Children into care. The PCE recommended Mother engage in therapy, and this became an objective in her SCP and in court orders. CUA referred Mother for mental health therapy in October 2015. Mother has never attended therapy. Mother testified that therapy was never one of her objectives, though it had been discussed at SCP meetings and court hearings where Mother was present. Mother testified that she attended family therapy with the Children, but was actually referring to another child who is not the subject of this case. At the beginning of the case, Mother consistently attended visits, and was given unsupervised visits. She began coaching the Children to withhold information from the foster parents, and her visits were changed to supervised. The Children had originally been placed with relatives, but had been removed and placed with unrelated foster parents at Mother's request. Mother testified falsely about her request, originally testifying that the relatives had failed FBI clearances. When asked about this contradictory testimony, Mother admitted that her original testimony had been untrue. The Children need permanency, which Mother cannot provide. Mother has demonstrated that she is unwilling to remedy the causes of her incapacity to parent in

> order to provide the Children with essential parental care, control, or subsistence necessary for their physical and mental well-being. Termination under this section was also proper.

Trial court opinion, 12/1/16 at 6-7.

Mother, however, argues that the record "does not support the finding that she failed to take affirmative action to rectify the circumstances that led to the removal of the children." (Mother's brief at 16.) Mother argues the evidence was insufficient to meet the clear and convincing standard. (*Id.* at 16-17.) Specifically, she indicates the only evidence offered was the testimony of the caseworker as to a lack of documentation regarding individual therapy, income or results of a medication evaluation. (*Id.* at 16.) Mother further challenges the court's evidentiary rulings during her cross-examination of the caseworker, which she contends prevented her "from eliciting any further information that the witness should have gleaned from his review of the case documents. (*Id.* at 17.) We disagree.

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). CUA caseworker Lloyd Guyton testified that Mother's objectives were "to sustain housing, to maintain a source of income, to attend therapy and to attend parenting classes." (Notes of testimony, 6/27/16 at 43.) Mr. Guyton also verified a parenting capacity evaluation. (*Id.* at 43.) Critically, he indicated that Mother failed to provide documentation as to mental health treatment, although acknowledging that she stated she had completed therapy, or a psychiatric

evaluation, as recommended by the parenting capacity evaluation,[9] as well as to income. (*Id.* at 43-44.) Further, as confirmed by Mr. Guyton, a parenting capacity evaluation conducted by William Russell, Ph.D., and Sheetal A. Duggal, Psy.D., dated December 2, 2014, opined that Mother lacked the "capacity to provide safety and permanency" for the Children. (*Id.* at 49. ***See also*** DHS Exhibit 14 at 10.) Notably, the evaluators highlighted Mother's potential inability to provide for the Children financially, noting, "[Mother] presented no secure plan of how she intends to financially support her children with a limited income." (DHS Exhibit 14 at 9.) In addition, the evaluators recognized Mother's lack of insight as to issues for which the Children were brought into care and her inability to accept responsibility.

> Additional barriers include [Mother's] continued denial and minimization of events that led to her children's removal (including keeping them in unsafe housing, failure to meet their medical and dental needs, and concerns regarding substance use) and she continues to project blame and responsibility onto others for DHS involvement. [Mother] was unable to make any connection between her behavior and parenting and the fact that all of the children have emotional/behavioral problems.

---

[9] Mr. Guyton testified that Mother was referred for therapy in October of 2015. (Notes of testimony, 6/27/16 at 50.) Mother denied the inclusion of any additional objectives and disputed any meetings as to her objectives following completion of the parenting capacity evaluation. (*Id.* at 76, 82.) However, Mother testified to her presence in court on numerous occasions since that time where there was testimony presented regarding her objectives. (*Id.* at 84.)

*Id. See also* notes of testimony, 6/27/16 at 49. The evaluators also recognized concerns as to the Children's putative father, who is a registered sex offender, which Mother minimized. (*Id.* at 5, 7, 9.) Similarly, the evaluators further observed that, despite completion of parenting classes, Mother, who admitted to the prior use of corporal punishment, "was unable to identify methods of appropriate discipline." (*Id.* at 9. *See also* notes of testimony, 6/27/16 at 49.) Therefore, as suggested above, among other things, the evaluators recommended Mother participate in individual therapy "with the focus to include identifying the role she played in her children's removal and for DHS's ongoing involvement with her family, [sic] monitoring possible substance use." (*Id.* at 10.)

Further, we note, the decision of whether to admit or exclude evidence is committed to the sound discretion of the trial court. *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1263 (Pa.Super. 2008) (citations omitted). *See also Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100-101 (Pa.Super. 2011); *Jacobs v. Chatwani*, 922 A.2d 950 (Pa.Super. 2007). This court may only reverse upon a finding of a clear abuse of discretion. *Id.* After review of the record, we do not discern any abuse of discretion with respect to the trial court's evidentiary rulings. Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re*

***Adoption of M.E.P.***, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. ***See id.*** As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decrees with regard to Section 2511(a)(2). ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

We next determine whether termination was proper under Section 2511(b). With regard to Section 2511(b), we have stated as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child

> bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015), quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

In determining that termination of Mother's parental rights favored Children's needs and welfare, the court concluded:

> Mother has consistently visited with the Children over the life of this case, but has not maintained a bond with them. She does not have a healthy maternal relationship with [A.L.] Mother has coached the Children improperly, whereby visits were changed to supervised. Mother appeared to confuse these Children with her other Children. Mother planned to have the Children adopted by a sex offender who is currently in prison. Mother interfered with the Children's placement and permanency to prevent them from being placed with relatives, in contravention of the purpose of the Juvenile Act. It is in the Children's best interest to terminate Mother's rights, as they will not suffer irreparable harm. Mother does not have a healthy parental relationship with [A.L.] [S.Q.L.] is hospitalized at the time of trial. CUA is exploring potential family resources. Although Mother visits with [S.Q.L.], the trial court did not hear any evidence of a bond between Mother and [S.Q.L.] Consequently, the trial court properly inferred that no parental bond exists with Mother. The court did not abuse its discretion when it found that it was clearly and convincingly established that there was no parental bond, and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

Trial court opinion, 12/1/16 at 10-11 (citations to record omitted).

Despite acknowledging Section 2511(b) in her brief, Mother fails to offer any discussion and/or analysis as to this subsection. Mother, therefore, waived any claim relating to Section 2511(b). **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011), **appeal denied**, 24 A.3d 364 (Pa. 2011), quoting **In re A.C.**, 991 A.2d 884, 897 (Pa. Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). **See also In re Adoption of R.K.Y.**, 72 A.3d 669, 679 n.4 (Pa.Super. 2013), **appeal denied**, 76 A.3d 540 (Pa. 2013) (declining to address Section 2511(b) where not challenged on appeal).

Nevertheless, in light of the requisite bifurcated analysis, we observe that, had Mother preserved this issue, we would have found it lacked merit. There was sufficient evidence to allow the trial court to make a determination of the Children's needs and welfare, and as to the existence of a bond between Mother and Children that, if severed, would not have a detrimental impact on them. Mother's visitation with the Children, while unsupervised for a time, was modified to supervised.[10] (Notes of testimony, 6/27/16 at 73-75.) Further, Mr. Guyton testified as to the unhealthy relationship between Mother and A.L. and no irreparable harm to either child

---

[10] Although disputing the truth, Mother acknowledged being advised that the change in visitation was due to coaching the Children not to disclose certain information to their foster parents. (Notes of testimony, 6/27/16 at 82-83.)

if Mother's parental rights were terminated. (*Id.* at 44.) Of significance, we also again recognize the parenting capacity evaluation, which concluded Mother's inability to provide safety and permanency for the Children, noting her lack of insight and acceptance of responsibility as to issues for which the Children were brought into care. (*Id.* at 49; DHS Exhibit 14 at 10.) As this court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *R.J.S.,* 901 A.2d at 513.

Accordingly, based upon our review of the record, we find no abuse of discretion in the trial court's decision to terminate Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Lastly, we turn to Mother's first issue, the question of whether the trial court appropriately changed the permanency goal to adoption. In so doing, our standard of review is the same abuse of discretion standard as noted above. *See In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015), citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010), for the proposition that the abuse of discretion standard applies in a dependency matter. Further, following an examination and findings of factors provided in 42 Pa.C.S.A. § 6351(f) and (f.1), regarding matters to be determined at the permanency hearing, the trial court must also find that a goal change is in Children's best

interests. *See* 42 Pa.C.S.A. § 6351(g); *In re R.J.T.*, 9 A.3d 1179 (Pa. 2010).

The primary purpose of the disposition of a dependent child is to examine what is in the best interest of the child. 42 Pa.C.S.A. § 6351(a); *In the Interest of Z.W., et al.*, 710 A.2d 1176, 1178 (Pa.Super. 1998). *See also In re Tameka M.*, 580 A.2d 750, 753 (Pa. 1990) (stating, "In ordering a disposition under Section 6351 of the Juvenile Act, the court acts not in the role of adjudicator reviewing the action of an administrative agency, . . . rather the court acts pursuant to a separate discretionary role with the purpose of meeting the child's best interests."), quoting *In re Lowry*, 484 A.2d 383, 386 (Pa. 1984).

In the case at bar, Mother posits that the trial court should not have changed Children's permanency goal to adoption, as the court failed to consider the "totality of the circumstances" pursuant to Section 6351(f). (Mother's brief at 9-10.) Again, Mother challenges the court's evidentiary rulings as to the testimony of the caseworker. (*Id.* at 10-12.) Mother argues, "It is this pattern of biased [sic] against Mother that accentuates the [c]ourt's unwillingness to comply with the 'totality of the circumstances' outlined in 6351(f) and which is proof that the court abused its discretion in terminating [M]other['s] parental rights." (*Id.* at 12.) Mother further asserts that she accomplished all goals for which she received referrals in 2015, and the remaining obstacle of therapy "was in progress and could

have rectified Mother's parenting deficits within a reasonable time." (***Id.*** at 12-13.)

However, supporting the goal change to adoption, the court reasoned:

> Mother expressed an interest in signing voluntary relinquishments of her parental rights to the Children, but only if her conditions for placement were met. Mother has interfered with the permanency of the Children before, asking that they be removed from relatives and have less contact with family. This conduct was clearly against the purposes of the Juvenile Act. Mother then lied in court, testifying that she had never asked for the Children to be removed. Mother intended to have the Children adopted by a sex offender. Mother improperly coached the Children and her visits had to be changed to supervised. Mother has not provided proof of her employment or income. Mother has not engaged in mental health treatment, despite it being an objective routinely discussed at SCP meetings and court hearings. Mother completed parenting classes but did not learn anything at all. Mother denied that there had ever been any issues in her house, and that her Children's teeth had rotted because they ate too much candy. Mother did not present the capacity to provide the Children with a safe and permanent home. Mother confused these Children with another one of her children. Mother does not have a healthy parental relationship with the Children. Adoption is in the best interest of the Children. Because of these facts, and the stipulated facts in the termination petition, it was clearly and convincingly established by credible testimony of DHS's witness that the court's change of permanency goal from reunification to adoption was proper.

Trial court opinion, 12/1/16 at 11-12 (citations to record omitted). With this, we agree.

Upon review of the record, Mother's claim lacks merit. The record reveals that a change of the permanency goal to adoption was in Children's best interests. Again, Mother failed to provide CUA with documentation as to completion with respect to all of her objectives, notably therapy and income. (Notes of testimony, 6/27/16 at 43-44.) Moreover, and more importantly, a parenting capacity evaluation revealed Mother's inability to provide for the Children's safety and permanency, noting her denial and minimization of issues related to the Children's placement in care, as well as her financial instability and inability to name appropriate forms of discipline. (DHS Exhibit 14 at 9-10.) In addition, Mother's visitation with the Children was changed to and remained supervised, and the caseworker testified as to no irreparable harm to either child if Mother's parental rights were terminated. (Notes of testimony, 6/27/16 at 44, 73-75.) Further, as we find no abuse of discretion as to the trial court's evidentiary determinations, we do not disturb them. ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa.Super. 2008) (citations omitted). ***See also Schuenemann v. Dreemz, LLC***, 34 A.3d 94, 100-101 (Pa.Super. 2011); ***Jacobs v. Chatwani***, 922 A.2d 950 (Pa.Super. 2007). Therefore, the record supports that a goal change was in the best interests of Children. Accordingly, after review of the record, we again discern no abuse of discretion, and conclude that the trial court properly changed Children's permanency goal to adoption.

J. S25032/17

Based on the foregoing analysis of the trial court's termination of Mother's parental rights and change of the Children's permanency goal, we affirm the decrees and orders of the trial court.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017